1  J. Scott Zundel, Esq.
   State Bar No 63303
2  J. SCOTT ZUNDEL
   A PROFESSIONAL LAW CORPORATION
3  74-000 Country Club Drive Suite C-4
   Palm Desert California 92260
4  (760) 568-0387 Telephone
   (760) 423-0623 Facsimile
5  Attorney for Defendants Harvey Duro, Sr.,
   and DESERT MOBILEHOME PARK INC., a California
6  corporation

7

8

9              UNITED STATES DISTRICT COURT
        FOR THE CENTRAL DISTRICT OF CALIFORNIA
10                  EASTERN DIVISION

11
                            | NO.  EDCV 07-1309 SGL (JCRx)
12
                            |
13  UNITED STATES OF AMERICA, | DEFENDANTS' OPPOSITION TO
                            | APPOINTMENT OF THOMAS JAMES
14  Plaintiff,              | FLYNN AND COUNTER NOMINATION
                            | OF PROVISIONAL RECEIVER
15                          | ALFREDO SANDOVAL AND OSCAR
        v                   | ARMIJO
16                          |
   HARVEY DURO, SR. and     |
17  DESERT MOBILEHOME PARK,  |
   INC., a California       |
18  corporation,            |
                            |
19  Defendants              |
                            | COURTROOM:        One
20                          | Judge:            The Honorable
                            |                   Stephen G.
21                          |                   Larson
                            | Time:             10:00 a.m.
22                          | Complaint Filed:  October 9, 2007
                            | Trial Date:       April 7, 2009
23

24

25

26

27

28

On December 18, 2008, this Court ruled that it intended to appoint a Provisional Receiver to manage the Desert Mobilehome Park.  The Court invited all interest parties to submit nominations for the position.  On December 31, 2008, Interveners' nominated Thomas James Flynn, hereiafter "Flynn".   Defendants oppose such nomination and believe Flynn to have demonstrated his lack of ability and is not qualified to manage the Park and request that the Court appoint Alfredo Sandoval and Oscar Armijo as Interim Receivers for the reasons set forth herein.  Defendants has consulted with both Plaintiff and Interveners and was led to believe by Interveners that they supported Defendants' proposed Interim Receivers.  That nomination of THOMAS JAMES FLYNN came as a complete and total surprise.

OPPOSITION TO APPOINTMENT OF THOMAS JAMES FLYNN:

A.   Attached hereto as Exhibit A, which is made a part hereof by this reference is a Management Agreement, hereinafter "Agreement" under which Flynn was to manage the Duro Mobilehome Park commencing July 1, 2008;

B.   Flynn acknowledged the terms of such Agreement;

C.   Flynn has willfully  failed to comply with the terms of such Agreement as follows:

1.   On or about July 2, 2008 Flynn caused California Bank to withdraw funds from Defendants personal

2

account in the amount of $7,128.00 and pay them to Flynn.  Said funds were collected by Defendants and deposited in their personal account as rents for periods prior to July 1, 2008.  Defendants and Flynn and this Court had acknowledged and agreed that rent paid for the period prior to July 1, 2008 belonged to Defendants.  Defendants have demanded that said funds be returned by Flynn has refused to even respond to the request.  The actions of Flynn in connection with the conversion of these funds and the improper payment of expenses to he and to Mark Adams constitutes embezzlement.

2.    The Agreement and THIS COURT'S prior orders require that Flynn provide Defendants' with such financial information as Defendant Duro might request.  Flynn and Adams have refused to do so. Defendants' have repeatedly requested such accountings but Flynn has refused.  Mark Adams informed Defendants that if they wanted accountings they would have to pay in advance his accounting costs for preparing same. See Exhibit B.

3.    Defendants financial advisor Oscar Armijo has sought financial accountings in order to pursue the loans with Canyon Bank and presently with Palm Desert National Bank and Union Bank but Adams and Flynn have refused to provide him with all requested

information.

4.   The Agreement directed and prior COURT ORDERS
     authorized Flynn to evict tenants violating building
     codes and park rules and tenants delinquent in
     rental payments.  Defendants have repeatedly
     requested that such action be taken.  Flynn has
     refused because of his other dealings with Tenants
     attorneys.

5.   Flynn and Adams act only for the benefit of the
     residential tenants and have existing and prior
     undisclosed relationships and business dealings with
     attorneys for the Tenants that prevent them from
     taking any reasonable and proper eviction action.

6.   Despite claiming superior management capability and
     experience, Flynn has continued an irresponsible
     manner of collecting rents, securing same and
     depositing same.  The result was the theft of funds
     by a Flynn employee, whom Defendants and recommended
     terminating, improperly protected and secured in the
     amount of $17,000.00+-.

7.   Flynn has misled the Court as to the Park's
     financial condition by failing to disclose that the
     delinquent accounts payable have increased from
     $0.00 to in excess of $116,676.00 as of the end of

4

November 2008. Flynn and Adams are NOT paying park bills but instead.

8.   From the limited financial information provided to Defendants it appears Flynn and Adams have conspired to breach the Agreement and have violated prior Court orders by using park revenues to pay the private loans of Mark Adams to CDFI and otherwise make payments to Mark Adams and Flynn calling said payments "reimbursement of expenses".

9.   Unhappy Park employees, previously working for Defendants have described the Park condition as "worse than prior to July 1, 2008" and the conduct of Flynn as "comes and goes" and as not being there "full time", having no "fixed and reliable schedule" and that "Adams and Flynn are raping the park for personal financial gain".  Those employees, fearing for the jobs will not come forward.

10.  Rental receipts are down under Flynn in excess of 20% per month from $123,413.00 to $104,484.00 the previous period of Defendants ownership and operation.

11.  Most importantly during the preceding 12 month period when Defendants' owned and managed the Park they spent a monthly average of $18,224.00 in park

improvements but during the period of July 1, 2008 to November 30, 2008 Flynn has spent an average of $5,122.00 per month on park improvements. Defendants spend 3 times more per month for tenant improvements than Flynn has. Money is NOT being spent on improving the living conditions of the Tenants.

12.  Money is not being deposited in a "Trust Account" as required by the Agreement and normal reasonable and professional management standards, Flynn uses Defendants vehicles and equipment without property security, insurance, repair and maintenance.

13.  Flynn and Adams' failure to provide all financial information, Adams' continued involvement, warnings by Flynn's employees were the main reason that Defendants were unable to proceed with the Canyon Bank loan request along with Defendants' total and complete lack of confidence in Adams and Flynn.

14.  Employees of Flynn, receive 2-3 different payroll checks which cannot be explained by any reasonable management or accounting practices.

15.  Contrary to the Court Orders and the Agreement Flynn and Adams are reimbursing themselves "expenses" out of Park funds.  Just for November Flynn reimbursed

6

himself $4,105.23.  For August and September Flynn reimbursed himself for "travel" in the amount of $1,574.96 and "auto expense" reimbursement in amount $1,228.64

In hindsight the involvement of Flynn and Adams in the Park matters has been a mistake.  They are neither capable, qualified, nor independent enough to be a part of a solution of the Park problems.  There is no amount of Court supervision that will control their financial practices.

ALTERNATIVE RECOMMENDATION FOR INTERIM RECEIVER

There are two alternative courses of action left at this point in time.  The first is the appointment of Defendants' proposed Receivers.  While Defendants acknowledge it will be difficult to keep the Park open by securing BIA lease approval and securing financing for repairs, Defendants' proposed Interim Receivers are the only hope the Park has to stay open.  They are the only hope for improving the tenants' living conditions, securing financing, obtaining lease approval and persuading the Plaintiff to be more cooperative in keeping the Park open.  The Plaintiff has no confidence in the ability of Flynn to either manage or to comply with the Court's requirements.  See attached Exhibits C1, C2 and C3 for the bio and experience of Defendants' proposed Interim Receivers.

Defendants proposed Interim Receivers have extensive

experience in management of mobile home parks, Indian leases, dealing with the BIA, banking, loans, property management, government assistance and finances.  They have a strong desire to save the park for the benefit of not only the Defendants but also the Tenants.  They are members held in high regard in the local community, by the BIA and by the Tribe.  They do not have a desire to use the Park as a source of personal revenue.  They have an interest in helping the tenants.  They have prepared a detailed time line to obtaining interim financing, approval of a lease from the BIA, and improvement financing and/or grants.  See attached Exhibit D1 and D2.

    Defendants would implore the Court to meet with its proposed Interim Receivers to discuss their plans before acting on the appointment of a permanent "Interim Receiver".  They have state, federal, local experience, local network, they are trusted and respected by all governmental entities that might have some involvement in this Park. Flynn and Adams have viewed with disdain and disgust by virtually all parties they have dealt with from their principal, Defendants, to the Tribe, to the BIA and to the County.

    The second alternative is the immediate closure of the Park. Contrary to the Court's view, Defendants respectfully submit that once the Court orders closure, the ability to properly relocate residents will be function of rental payments.  If rents cease utilities and safe living conditions cease and whether by Court order or otherwise Tenants will be forced to leave. Flynn has a 9

1 month tract record of failure and conflicts which would prevent him
2 from taking the proper action to collect rents during the closure
3 period.  Only the Interim Receivers suggested by Defendants will be
4 able to take the proper actions to encourage rental payments to
5 allow and closure of the Park that provides the best potential and
6 maximum time for relocation of Tenants from the Park.

7

8     The qualifications of Defendants' proposed Interim Receivers
9 are attached hereto as Exhibits C1, C2 and C3.  They proposed time
10 "Plan" and "timeline", Exhibits D1 and D2 are the only hope for the
11 Park and its tenants*.

12

13     Oscar Armijo has years of extensive experience working on low
14 income housing projects including mobilehome parks, with various
15 cities in the Coachella Valley, the CV Housing Coalition, Imperial
16 Valley County and hands on experience in managing distressed mobile
17 home parks. Riverside County Supervisor Roy Wilson can vouch for
18 his integrity, competence and experience.  He has conducted in
19 excess of 250 audits for low income housing projects for HUD and
20 USDA.

21

22

23     Defendants' believe, as do the Defendants' proposed Interim
24 Receivers, that rent to Defendant Harvey Duro can and should be
25 restored and paid.  Without income from the Park, Defendants have
26 NO funds to pay for their defense in this subject litigation.

27

28     Should this Court appoint Flynn as Interim Receiver and

1  continue the involvement of Mark Adams in the affairs of this Park,
2  Defendants would and do hereby request and/or stipulate that their
3  answer and any opposition and/or objections as it pertains to the
4  Plaintiff's request to close the Park and cease operations be
5  withdrawn and/or would stipulate to an order directing the
6  immediate closure of the Park subject to Court approved relocation
7  periods for the Tenants.  In addition Defendant will notify
8  Imperial Irrigation District to close his account and to terminate
9  his liability to Imperial Irrigation District.

12     With regards to processing an interim loan at Palm Desert
13  National Bank it can go no further until Flynn provides to
14  Defendants the financial records per the Court's prior orders,
15  Defendants' request and the Agreement AND the Court's action on the
16  appointment of an Interim Receiver(s).

20                          Respectfully submitted,

21  January 2, 2008         LAW OFFICES OF J. SCOTT ZUNDEL
                            BY

23                          _____
                            J. SCOTT ZUNDEL, ESQ. ATTORNEY
24                          DEFENDANTS, HARVEY DURO SR. and
                            DESERT MOBILEHOME PARK, INC., a
                            California corporation

10