1  MARK S. ADAMS, SB 68300
   150 S Barrington Ave. St. 100
2  Los Angeles CA 90049
   (310)471-8181
3  Fax (310)471-8180

4

5              UNITED STATES DISTRICT COURT

6          FOR THE CENTRAL DISTRICT OF CALIFORNIA

7

8  UNITED STATES OF AMERICA,        Case No. EDCV07-1309 SGL (JCRX)

9              Plaintiff,

10       v.                         **APPLICATION FOR AN ORDER
                                     DIRECTING REIMBURSEMENT OF
11 HARVEY DURO, SR. and             RECEIVERSHIP ADVANCES AND
   DESERT MOBILEHOME PARK,          EXPENSES AND DECLARATION OF
12 INC., a California corporation,  MARK ADAMS**

13           Defendants.

14

15        1. I am an attorney duly licensed to practice law in California. I was the original receiver

16 appointed in the above-referenced case ("Mark Adams receivership"). I am also an officer of

17 Duroville Renaissance Corp., the nonprofit California corporation subsequently appointed as

18 receiver for Duroville ("DRC Receivership") and served in that capacity until April 30, 2009.

19        2. I understand that whether, how much and when the costs of either the Mark Adams

20 receivership or the DRC receivership are to be paid rests with the sound discretion of this Court.

21 Out of respect for the precarious financial condition of Duroville, and because I thought the Court

22 was well aware of just how much time and effort I had expended over the last year [1], I originally

23 intended to postpone my request for reimbursement until after the Court had made the

24 fundamental decision of whether the Park would remain open and, if yes, whether I or DRC

25 would be able to include such costs in various government and charitable grant applications we

26

27 ───────────────
   [1] The 640 hours I worked over the last 12 months (and assuming a lawyer's typical billing of 180-200 hours per
28 month) is the equivalent of me working 3 ½ months full time on the Mark Adams Receivership and the DRC
   receivership.                              APPLICATION/DECLARATION OF MARK
                                                                          ADAMS

   LA/84436.1

1    intended to submit after the Court's ruling on Thursday.

2        3. That plan changed for me since now neither DRC nor I will have any long term role in

3    the Duroville receivership. I submit this request now in the hopes that the Court will acknowledge

4    via its order that I never was asked to (nor offered) to work without compensation; that I

5    performed a large number of critical roles in getting Duroville from "there to here";  and that, as I

6    presume even my critics will acknowledge,  the work of the DRC Receivership simply would not

7    have gotten done over the last 12 months had it not been for my work and the work of my staff

8    (the cost of which I absorbed and which by contrast the Court reimbursed at the rate of $10,000

9    per month during the Mark Adams receivership).

10       4. I submit this Application and Declaration in support of my request for payment of a

11    total of $14,505.83 of personal funds I advanced to this receivership as well as $224,303.33 in

12    billable time from May 23, 2008 to April 30, 2009.  I request that Defendants Harvey Duro and

13    Desert Mobilehome Park be ordered to pay these amounts. I also request that the Court order that

14    I be paid $5,000 per month out of the previously ordered $15,000 monthly property management

15    fee until I am paid in full.

16       2. Attached hereto as Exhibit "1" is detailed statement of cashflow for the Mark Adams

17    Receivership. [2] Attached as Exhibit "2" is a summary chart and detailed entries for my billable

18    time throughout the Mark Adams Receivership and the DRC Receivership.

19       3. As seen in Exhibit "1", I have advanced net personal funds of $14,505.83 to the Mark

20    Adams Receivership, $7,671.25 of which was due to me at June 30, 2008. As can also be seen in

21    Exhibit "1", most of those advanced funds ($11,644.22) were used to pay interest on the $220,000

22    CDFI line of credit. Starting in January, 2009 the Court authorized the DRC receivership to pay

23    the CDFI interest directly from park funds (approximately $1600 per month).

24       4. I ask the Court to order the entire $14,505.83 be ordered paid to me.  I am advised that

25    an objection has been made to me being reimbursed for interest on approximately $52,000 which

26    I drew down on the CDFI line to reimburse myself for billed but not yet court-approved time

27

28

---

[2] Exhibit 1 is substantially identical to the cashflow statement I submitted to the Court and served on the parties as part of my April 23, 2009 Declaration re various accounting issues. Certain minor re-formattting adjustments have been made to the information.

- 2 -

LA/84436.1

1    from May 23, 2008 onward. The objection is not well-founded since, as can be seen in Exhibit 2,

2    by June 30, 2008 I was owed  $23,537.50 in billed time and $7,671.25 in personal funds

3    advanced for a total of $31,208.75. The receivership should be responsible for that interest. But in

4    the event the Court concludes that interest expense was mine, the interest on $52,000 from July 1,

5    2008 to March 31, 2009 is $3,625. So the net amount to be reimbursed to me would be

6    $10,880.83 ($14,505.83 less $3,625).

7         5. With respect to my billed time from May 23, 2008 to April 30, 2009 (Exhibit 2),  the

8    summary describes the work by category. Representation of DRC as an attorney, preparation of

9    receivership reports and attendance at court hearings in this contentious litigation is the largest

10    category ($62,562.50) [3], followed by property management at Duroville ($56,886.67) [4].

11    Implementation of the Study Group's recommendations re rehabilitation of Duroville and

12    exploration of alternatives thereto [5] was $29,545.83. In light of the Court's eventual ruling that

13    Tom Flynn would continue as receiver for the property I realize the $30,975 in time for my

14    attendance at trial may seem high. Had I known either before or during the trial that the DRC

15    Receivership would be terminated at the completion of trial, I simply would not have attended. At

---

[3] By my count, there were 7 status conferences, a hearing on the summary judgment motion and a pretrial conference since May, 2008. I was the lead person in preparing the very extensive receivership reports which were submitted at many of these conferences and also handled all follow-up matters from these hearings. I also drafted the proposed lease between DRC and Mr. Duro, prepared Tom Flynn for and attended his deposition, researched the impact of Mr. Duro's possible bankruptcy on this proceeding, negotiated a deal with the attorney for the Imperial Irrigation District not to shut off the power to the park at least until after the Court acted on our proposed utility delinquency collection program (which I drafted),  and conceived and implemented the very innovative litigation strategy to collect the stolen money from Mary Lou Barbers

[4] Messrs. Flynn and Hilton handled the day-to-day property management at the park.  I backed them up and "spelled" them as, for example, on the January weekend prior to the due date for compliance with the Court's fire safety order, I spent 3 days at the park so that Mr. Flynn could attend to his health problems in Los Angeles and Mr. Hilton could go visit his family in Guadalajara. I was also  responsible for extraordinary matters, e.g. firing Frank Ramos (husband of the bookkeeper who stole $26,000 from the park) and defeating his claim for unemployment compensation, initiating the Dogs of Duroville neutering program, and initiating contact with Canyon Bank for a proposed bridge loan for the park. I arranged for insurance broker Mike Checca to come up with a comprehensive insurance package for Duroville which, unfortunately for budget reasons, was never implemented.

[5] Many of the projects I was responsible for were relatively invisible. For example,  I developed the Lazarian Homes proposal in the hopes of finding a cost-effective building alternative to buying new mobilehomes for the park. That project included a trip to Tecate Mexico, several tours of Duroville with the principals and innumerable emails. While the Court has never  acted on that report, the Torres Martinez tribe is enthusiastically working with Lazarian Homes elsewhere on the reservation.  I also responded to Bruce Nott's offer to make available his 200 acre ranch for either temporary or permanent use by the people of Duroville in the event the Court ordered closure or (as emergency contingency planning) the park unexpectedly became unfit for human occupancy. Mr. Nott's offer led to a meeting with Supervisor Wilson and his staff which in turn led to the County's funding request to the federal government for Mountain View Estates.

- 3 -

1    the time, though, I considered it a legal and ethical obligation for me to be there. Simple fairness

2    in my view dictates that I be compensated for my time.

3         6. I would like to highlight for the Court those expenses for which I do <u>not</u> seek

4    reimbursement. During the Mark Adams receivership, the Court awarded me a monthly

5    administration fee of $10,000 to cover my staff's time and expenses in handling the work of the

6    receivership. That staff continued to do those tasks through April 30, 2009 and I absorbed those

7    costs. [6] All together, that is $110,000 in administrative costs <u>not</u> being reimbursed. [7]

8         7. As with the previous receivership orders, I ask that the Court order these expenses paid

9    by Defendants Duro and DMHP. I also ask that the Court direct payment of these expenses by the

10   new receivership out of the $15,000 monthly property management fee and at the rate of $5,000

11   per month until paid.

12        8. I was not aware until recently that the previously awarded $15,000 monthly property

13   management fee was intended for both myself and Tom Flynn. In any case, knowing that Mr.

14   Flynn also has a family to support and since he was working full time at Duroville, I never even

15   raised the question with him or the Court of whether I should be paid any portion of that monthly

16   fee. The bottom line, though, is I have not received any compensation of any kind for my work

17   on Duroville for almost a year. I'm simply not in a financial position to continue that state of

18   affairs.

19        9. On a go-forward basis,  in consideration of the $224,000 in billable time I've incurred

20   over the last year, the $14,000 I've advanced out of my own pocket, the $220,000 I borrowed

21   from CDFI on behalf of this receivership, and the over $110,000 in expenses I am foregoing, I

22   believe it is only fair that at least $5,000 of the monthly management fee be paid to me until I am

23   ///

24   ///

25   ///

26

27   [6] Regrettably for all, I am no longer in a position financially to cover those costs or even to carry those employees.
     [7] I also would like the Court to know I am not seeking reimbursement for any of my travel expenses (hotel rooms, car
28   mileage etc). I also concluded that the many thousands of dollars (and hundreds of hours of time) I spent on morale-
     building for Tom Flynn and Chris Hilton are not properly reimbursable expenses.

- 4 -

LA/84436.1

1  paid fully for everything I did under the Court's authority.

2  I declare under penalty of perjury that the foregoing is true and correct.

3

4

5

6  Dated: May 2, 2009                              By _____
                                                      Mark S. Adams
7

8  ///

9  ///

10  ///

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ////

20  ///

21  ///

22  ///

23  ///

24  ///

25  ////

26  ////

27  ///

28  ///

- 5 -

LA/84436.1