ARTURO RODRIGUEZ, SBN 116541
MEGAN BEAMAN CARLSON, SBN 261539
CALIFORNIA RURAL LEGAL ASSISTANCE, INC.
P.O. Box 35/1460 Sixth Street
Coachella, CA  92236
Tel:  (760) 398-7261
Fax: (760) 398-1050
arrodriguez@crla.org

ILENE J. JACOBS, SBN 126812
CALIFORNIA RURAL LEGAL ASSISTANCE, INC.
511 "D" Street, P.O. Box 2600
Marysville, CA 95901
Tel: (530) 742-7235
Fax: (530 )741-0854
ijacobs@crla.org

Additional Counsel Listed on Second Page

Attorneys for Interveners/Defendants CRUZ NAVARRO, DELFINA OCHOA and ORBELINA ESCOBAR

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO.  EDCV 07-1309 SGL (OPx) |
| | ) |
| Plaintiff, | ) **INTERVENERS' OBJECTIONS TO** |
| | ) **PAYMENT OF INTEREST ON CDFI** |
| vs. | ) **LOAN OBLIGATION FROM RENT** |
| | ) **PROCEEDS AS ORDERED IN THE** |
| HARVEY DURO, SR.; et al., | ) **ORDER RE REMEDIES AFTER** |
| | ) **BENCH TRIAL** |
| Defendants | ) |
| _____ | ) **Post Trial** |
| CRUZ NAVARRO, DELFINA OCHOA | ) |
| PEDRO LOPEZ and ORBELINA | ) Hon. Stephen G. Larson |
| ESCOBAR, | ) |
| Interveners/Defendants. | ) |
| _____ | ) |

CHANDRA GEHRI SPENCER, SBN 184010
A Professional Law Corporation
445 S. Figueroa Street, Suite 2700
Los Angeles, CA 90071
Tel: (213) 489-6826
Fax: (818) 597-3288
cgs@cgslaw.com

This Court entered its ORDER RE REMEDIES AFTER BENCH TRIAL on April 30, 2009. In part, the Court ordered that interest, approximately $1,600.00 per month, on the CDFI obligation of incurred by Mark Adams be paid from the rent proceeds from the park. The loan, in the amount of $220,000 was incurred as a personal obligation by Mr. Adams. The Court also afforded "leave to any party of record to object to this portion of this Order within ten days of this Order." (Order re Remedies After Bench Trial, page 12.)

Interveners hereby object to the provision ordering that interest on the *entire* loan obligation be paid from park rental proceeds.[1] Interveners wish to make it clear that these objections are based on Interveners understanding of the record in this matter as reflected in the Court Orders and records on file and available to them. Interveners understand that from February 11, 2008 through and including May 1, 2008, Mr. Adams served as the Court's Provisional Receiver. As an Officer of the Court, Mr. Adams may have received instructions and communications from the Court to which Interveners were not privy to and of which they have no knowledge.

## A. BACKGROUND

On February 11, 2008, the Court appointed Mr. Adams as its Provisional Receiver and set forth his duties and responsibilities as the Provisional Receiver. As part of its Order, the Court provided that "[t]he Provisional Receiver and the two Special Masters shall be paid their costs and reasonable fees for their services." As

---

[1]/
This Objection is intended to comply with the Court's direction to file said within ten days of the Court's April 30, 2009 Order in regards the payment of interest on the $220,000 CDFI loan from park rents. Pursuant to the Court's Order, Interveners intend to file further objections to the accountings and request for additional fees filed by Mr. Adams on May 5th and 8th of 2009 within the Court allotted ten days.

1  part of its Order of February 11, 2008, the Court instructed the Study Group to prepare

2  a Report and Recommendation to be filed by April 11, 2008 and set the matter for

3  hearing on April 28, 2008.

4      On April 10, 2008, the Court *sua sponte*, modified its Order of February 11,

5  2008 and in pertinent part held: "The Court further ORDERS that the powers of the

6  Provisional Receiver remain in place until after the entry of the Courts (*sic*) minute

7  order regarding the hearing to be held on April 28, 2008." (Court Minute Order

8  entered on April 10, 2008.)

9      The hearing of April 28, 2008 was subsequently held and this Court issued its

10  Minute Order Granting Motion for Preliminary Injunction on May 1, 2008. It is

11  Interveners position that the entry of the court's minute order terminated Mr. Adam's

12  duties as a Provisional Receiver and that he no longer served in said capacity after May

13  1, 2008.

14      In its Order of May 1, 2008, the Court held in relevant part:

15      On or before July 1, 2008, defendants shall certify under penalty of perjury, and

16      provide adequate documentation, of having met the following conditions:

17      3. Proof of payment of outstanding obligations to the Study Group. The Court

18      ORDERS the Provisional Receiver to serve his final accounting to the parties

19      of record. The Court shall entertain any objections to the reasonableness of the

20      the expenses incurred by the Special Masters and Provisional Receiver on or

21      before May 15, 2008. *The Court will thereafter issue an order directing*

22      *payment of all reasonable fees and costs.* (Emphasis added, Order Granting

23      Preliminary Injunction, entered May 1, 2008.)

24  On May 15, 2008, Defendants filed Objections to the First, Second, Third and Fourth

25

Receiver's reports.  No other parties filed objections to the Provisional Receiver's reports.

On May 23, 2008, the Court, *sua sponte*, issued a minute order, holding in relevant part:

Accordingly, consistent with the orders and findings set forth above, defendants Harvey Duro, Sr. and Desert Mobilehome Park, Inc are ORDERED, jointly and severally, to pay the Study Group, and to provide proof of such payment to the Court, on or before July 1, 2008, as follows:

Ambassador Pierre-Richard Prosper:        $62,000

Jack Shine:                               $36,000

Mark Adams (including costs
and fees related to receivership
as well as emergency repairs related
imminent threats to health and
safety):                                  $122,000

In the Fourth Receiver's Report, filed with this Court on April 25, 2008, Mr. Adam's report reflects disbursements in March and April OF 2008 to Ambassador Prosper in the amount of $16,665, to Jack Shine in the amount of $31,125 and to Mark Adams (himself) in the amount  of $76,627.50.  Additional disbursements reflecting "expenses," including $10,000 in payments to Tom Flynn,  reflect total disbursements of $154,360.81 by Mr. Adams as of April 24, 2008.  (Fourth Receiver's Report, pages 9-10.)  In his declaration attendant to the report, Mr. Adams states:

The balance sheet shows a current cash balance of $2,730.64.  It reflects the complete drawdown of the $150,000 line of credit, $7500 due to the Receiver for additional advances made by me, and $68,654.44 in pending payables (those pending payables being April invoices by the 2 special masters and earlier

invoices which could not be paid due to delayed submission and insufficient cash available.) [Declaration of Mark Adams attached to Fourth Receiver's Report.]

Per Mr. Adams' Declaration, as of April 25, 2008, Mr. Adams had exhausted the $150,000 line of credit that he had established with CDFI during the course of his Provisional Receivership.

### B. OBJECTIONS TO INTEREST PAYMENT ON ENTIRE CDFI LOAN

It is clear from a review of the above-cited record, that as of the termination of Mr. Adam's duties as a Provisional Receiver on May 1, 2008, the outstanding loan obligation to CDFI as reflected in Mr. Adams report filed on April 25, 2008 was for the amount of $150,000.  It is also clear that Mr. Adams had fully disbursed the entire $150,000 to pay, primarily, the costs and fees incurred by the Study Group.  The record further reflects that these disbursements were made *before* the deadline of May 15, 2008 which the Court had set for the Parties to file objections to the fees and costs requested by the Study Group and *before* the May 23, 2008 Court Order rejecting the objections filed by Defendants on May 15, 2008 and holding that Harvey Duro, Sr. and Desert Mobilehome Park were jointly and severally liable for the full $220,000 billed by the Study Group.  Interveners also note, that neither they, nor any other party, objected to the use of the CDFI loans funds to pay for the Study Group, or other reasonable expenses incurred during the time that the Study Group was carrying out the Court's orders.  (Defendants objections were directed primarily to the necessity of the expenditures and the reasonableness of the fees and costs *and not* to the fact that payments had been made without express Court authorization and/or approval or that

the source of the payments were the CDFI loan funds.)

Interveners contend that the Court should limit its Order directing that interest payments to the CDFI loan obligation from park rents to that portion of the loan which was incurred and disbursed during Mr. Adam's term as Provisional Receiver, or $150,000. It is not clear to Interveners when Mr. Adams secured the additional $70,000 line of credit or augmented the original line of credit from CDFI from $150,000 to $220,000. In a Report and Declaration of Mark Adams dated June 30, 2008, at page 3, footnote 7, Mr. Adams declared:

> And of course what makes it even more contemptible is that I, based on the Court's previous orders, had personally borrowed $150,000 (now $220,000) from CDFI to cover the costs of the Study Group.[2]    That personal debt was incurred based on the assurance that DRC would control the cashflow of the park.  So now I am in the unconscionable position of owing CDFI $220,000 without any source of payment, either the Park or Duro personally.  I have decided to hold the net $70,000 of that personal loan until this matter is resolved by the Court on June 30. (Emphasis in the original.)

What is clear from Mr. Adams' declaration, however, is that at the termination of his status as Provisional Receiver, Mr. Adams' use of CDFI loan funds was limited to the initial $150,000 line of credit and that as of June 30, 2008, Mr. Adams had secured an additional $70,000 from CDFI but had "decided to hold the net $70,000 of that personal loan until this matter is resolved by the Court on June 30."

---

[2]
Pursuant to Interveners' initial caveat, Interveners could not find a Court Order directing Mr. Adams to use the CDFI line of credit to pay what the Court later determined to be the obligations of Defendants Duro and Desert Mobilehome Park to pay the Study Group.

It appears that the additional $70,000 was used, in large part, by Mr. Adams to pay himself for services rendered after the termination of his Receivership.  In the Application for Order Directing Reimbursement of Receivership Advances and Expenses and Declaration of Mark Adams filed with the Court on May 8, 2009, Mr. Adams states in his Declaration:[3]

> I am advised that an objection has been made to me being reimbursed for interest on approximately $52,000 which I drew down on the CDFI line to reimburse myself for billed but not yet court-approved time from May 23, 2008 onward.  The objection is not well-founded since, as can be seen in Exhibit 2, by June 30, 2008 I was owed $23,537.50 in billed time and $7,671.25 in personal funds advanced for a total of $31,208.75.  The receivership should be responsible for that interest.  (Application for Order Directing Reimbursement of Receivership Advances and Expenses and Declaration of Mark Adams filed with the Court on May 8, 2009, at page 2, lines 24-26; page 3, lines 1-3.)

Interveners respectfully disagree with Mr. Adams.  It is Interveners's understanding that after the termination of Mr. Adams' status as Receiver on May 1, 2008, Mr. Adams and DRC were employed by Harvey Duro, Sr. to carry out the conditions of the Court's Preliminary Injunction.  Any claims by Mr. Adams for work performed after May 1, 2008 should be directed to Mr. Duro and/or Desert Mobilehome Park.  Until such time as this Court issues an Order approving the work done by Mr. Adams post May 1, 2008 and Orders that Mr. Duro and/or Desert Mobilehome Park are liable for such claims, Interveners object to interest payments being made from park rent

---

[3]/
As previously noted, Interveners intend to file additional objections to the Report and will do so within the allotted 10 days.

proceeds on the additional $70,000 line of credit advanced personally to Mr. Adams by CDFI and used by Mr. Adams without Court approval or supervision.[4]

## C. CONCLUSION

In light of the above-stated objections, Interveners respectfully request that the Court modify its Order of April 30, 2009 to reflect that the current receiver, Tom Flynn, be directed to pay interest on that portion of the CDFI loan obligation incurred during Mr. Adams' stint as Provisional Receiver from February 11, 2008 through and including May 1, 2008, or $150,000.

Dated: May 14, 2009

Respectfully Submitted:

CALIFORNIA RURAL LEGAL ASSISTANCE, INC.
    Arturo Rodriguez
    Ilene J. Jacobs

CHANDRA GEHRI SPENCER
    A Professional Law Corporation

By:   ARTURO RODRIGUEZ
    Attorneys for INTERVENERS

---

[4] We note that there is a discrepancy between the $70,000 which Mr. Adams decided to "hold" pending the hearing on June 30th and the avowed payment to himself of $52,000 for work performed after May 1, 2008. Interveners have not been able to account for the $18,000 discrepancy. In any event, it is clear that as of June 30, 2008, Mr. Adams had not disbursed those funds and we have not been able to find a Court Order directing use of those $18,000 (nor, of course, to the $52,000 which Mr. Adams paid to himself.)