1  DOUGLAS G. TENNANT, Bar No. 119133
2  FRANKEL & TENNANT
   PROFESSIONAL CORPORATION
3  895 Dove Street, Suite 119
4  Newport Beach, California 92660
   dtennant@frankel-tennant.com
5  Telephone: (949) 222-3456
6  Facsimile: (949) 222-3453

7
8  Attorneys for
   CLEARINGHOUSE COMMUNITY
9  DEVELOPMENT FINANCIAL INSTITUTION

10

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: EDCV07-1309 |
| Plaintiff, | DECLARATION OF KRISTY OLLENDORFF IN SUPPORT OF MOTION FOR ORDER INCREASING PAYMENTS TO CLEARINGHOUSE COMMUNITY DEVELOPMENT FINANCIAL INSTITUTION FROM CERTAIN PROCEEDS FROM THE RECEIVERSHIP OF DESERT MOBILEHOME PARK, INC. |
| v. | |
| HARVEY DURO, SR. and DESERT MOBILEHOME PARK, INC, a California corporation, | |
| Defendants. | Date:        September 2, 2010 |
| | Time:        10:00 a.m. |
| | Courtroom: 4 |
| | 3470 Twelfth Street |
| | Riverside, Ca 92501 |
| | Hon. David T. Bristow |

-1-

**Declaration of Kristy Ollendorff in Support of Motion for Order Increasing Payments From the Receivership**

ORIGINAL DOCUMENT
PREPARED ON RECYCLED PAPER

FRANKEL & TENNANT PROFESSIONAL CORPORATION
895 Dove Street, Suite 119, Newport Beach, CA 92660
Tel: (949) 222-3456  Fax: (949) 222-3453

## DECLARATION OF KRISTY OLLENDORFF

I, Kristy Ollendorff, declare:

1.      I am the Director of Commercial Lending and Chief Commercial Credit Officer of Clearinghouse Community Development Financial Institution ("CDFI"), the mission of which is to direct loan funds to lower-income individuals and communities through innovative and affordable financing that is unavailable in the conventional marketplace.  As Director of Commercial Lending and Chief Commercial Credit Officer, I am one of CDFI's employees primarily responsible for managing CDFI's $220,000.00 loan to the Court' first receiver Mark Adams, appointed by this Court on February 11, 2008 ("Original Receiver").  I am also one of the duly authorized custodians of records of CDFI, and the documents, books and records hereafter referred to have been maintained in the ordinary course of business of CDFI, and its predecessors, and have been prepared at or near the time of the acts, events, conditions or opinions reflected therein by persons who have business duty to do so.  I have personal knowledge of CDFI's filing system and each of the documents hereinafter referred to was located in and retrieved from the appropriate file for the designated loan transaction.  The facts set forth in this declaration are true based on my personal knowledge and based on my review of CDFI's books and records, and if called as a witness, I could and would testify competently thereto under oath.

2.      In April 2008, CDFI made a loan (the "Loan") to Mark Adams ("Adams") in the original face amount of $150,000.00 in connection with Adams' role as the Original Receiver and/or property manager for the Duroville property located at 68-800 State Highway 195, Thermal, California, which is the subject of this action.  The Loan was made for the express purpose of funding the Court-ordered, three-person "Study Group" comprised of Adams, Ambassador Pierre-Richard Prosper, and Jack Shine, established by the Court's order dated February

-2-

FRANKEL & TENNANT PROFESSIONAL CORPORATION
895 Dove Street, Suite 119, Newport Beach, CA 92660
Tel: (949) 222-3456 Fax: (949) 222-3453

---

11, 2008.  Consistent with CDFI's mission, Loan funds were intended to facilitate the turnaround of the property, and the Loan was made in reliance upon the Court's orders.

3.    The Loan was evidenced by a Promissory Note dated April 4, 2008 ("Note") and a Business Loan Agreement dated April 4, 2008 ("Loan Agreement"), as well as other Loan documents (collectively, the "Loan Documents").  True, correct and complete copies of the Note and Loan Agreement are attached hereto as Exhibits A and B, respectively.

4.    In accordance with the terms of the Loan Documents, CDFI advanced a total of approximately $150,000.00 in Loan funds for the benefit of the property, during April 2008: (i) on April 8, 2008, CDFI advanced $128,420.00; and (ii) on April 21, 2008, CDFI advanced $21,000.00.

5.    On May 23, 2008, by Minute Order, the Court approved expenses incurred by the Study Group totaling $220,000.00 (Prosper $62,000.00; Shine $36,000.00; and Adams $122,000.00), and expressly found defendants Harvey Duro, Sr. ("Duro") and Desert Mobile Home Park (the "Park") jointly and severally liable for payment of the $220,000 owed the Study Group.  Duro and the Park never paid any of the amounts due the Study Group.  Instead, CDFI funded the amounts to be paid the Study Group through the Loan to the Court's Original Receiver.

6.    On or about June 4, 2008, in reliance upon the Court's May 23, 2008 Order and February 11, 2008 Order, CDFI approved a request by the Court's Original Receiver to increase CDFI's Loan to $220,000.00.  The Loan increase was documented by a Change in Terms Agreement dated June 4, 2008, a true and correct copy of which is attached hereto as Exhibit C.  CDFI advanced the additional $70,000.00 to the Loan on June 18, 2008.  To be exact, as of June 18, 2008, the total outstanding principal balance of the Loan was $219,417.00 (which remains unchanged as of the date of this Declaration).  The funds were advanced by

FRANKEL & TENNANT PROFESSIONAL CORPORATION
895 Dove Street, Suite 119, Newport Beach, CA 92660
Tel: (949) 222-3456  Fax: (949) 222-3453

-3-

1  CDFI to the Court's Original Receiver for the express purpose of paying the Court-
2  approved amounts due the members of the Study Group.

3      7.    The Loan matured by its terms on May 1, 2009, and has not yet been
4  paid off. CDFI is grateful for the Court's April 30, 2009 Order re Remedies After
5  Bench Trial, in which the Court acknowledged CDFI's $220,000.00 Loan to pay for
6  the Study Group, and in which the Court ordered that interest payments on the Loan
7  be paid from Rent proceeds collected at the Park. Pursuant to the Court's Order on
8  April 30, 2009, CDFI received interest only payments in June 2009, and August
9  2009 through May 2010. As of July 1, 2010, the outstanding principal balance on
10 the Loan remains unchanged at $219,417.00, with accrued unpaid interest of
11 $715.36 (for the period April 1, 2009 through July 1, 2009), for an aggregate
12 outstanding balance of $220,132.36. In addition, CDFI has incurred $25,036.00 in
13 legal fees (as of the end of May, 2010) associated with this transaction for which
14 CDFI is not currently requesting reimbursement.

15     8.    Based upon my discussions with the current receiver Thomas J. Flynn
16 ("Receiver"), and my review of the monthly financial reports filed by the Receiver
17 with the Court, it appears clear that the property is generating sufficient funds to
18 make payments of principal and interest, and to pay off the Loan on a commercially
19 reasonable basis over the next 39 months. Attached hereto as Exhibit D is a chart
20 prepared under my direction and supervision of the monthly income and expenses
21 of the Park as reflected in the Receiver's monthly financial reports filed with the
22 Court. This chart shows the increase in the Duro monthly stipend from $2,000 to
23 $5,000 in October 2009, and shows the Park has an average net income in excess of
24 $3,000 per month under the Receiver's management. Attached hereto as Exhibit E
25 is an amortization schedule based on the payments requested by this motion.

26     9.    Pursuant to the Court's October 1, 2009 Order directing the Receiver
27 to meet and confer with CDFI regarding reaching a solution to the payment of the

28

FRANKEL & TENNANT PROFESSIONAL CORPORATION
895 Dove Street, Suite 119, Newport Beach, CA 92660
Tel: (949) 222-3456  Fax: (949) 222-3453

-4-

1  outstanding Loan, CDFI has engaged in multiple efforts in good faith to arrive at a
2  compromise solution with the Receiver.  Such efforts have concluded with the
3  Receiver indicating that he believes a further Court Order is necessary before he can
4  change the distribution payments from the rent proceeds collected at the Park.

5      10.    Despite the Court previously finding Duro and the Park liable and
6  ordering them to pay the $220,000 in costs incurred by the Study Group in 2008,
7  neither Duro nor the Park has paid any portion of the amounts due to either the
8  Study Group or to CDFI.  Receiver could redistribute payments from rental
9  proceeds of the Park to CDFI without increasing costs to the Park.  It is unfair and
10 inequitable for Duro and the Park to keep the positive income from rental receipts
11 while CDFI continues to receive no principal payments for the Loan.

12     11.    Accordingly, CDFI respectfully requests this Court direct Receiver to:
13 (1) reduce the stipend amount to Duro to the previous amount of $2,000 per month;
14 (2) direct Receiver to instead pay CDFI the $3,000 per month remainder from the
15 current Duro stipend to go towards reducing the Loan principal; (3) direct Receiver
16 to pay to CDFI $2,000 per month from the Park operating income after paying all
17 necessary expenses to maintain the Park for the health and safety of its residents to
18 go towards reducing the Loan principal; and (4) direct Receiver to continue paying
19 the monthly interest payments to CDFI.

20 \\\
21 \\\
22 \\\
23 \\\
24 \\\
25 \\\
26 \\\
27 \\\
28

-5-

FRANKEL & TENNANT PROFESSIONAL CORPORATION
895 Dove Street, Suite 119, Newport Beach, CA 92660
Tel: (949) 222-3456  Fax: (949) 222-3453

1      12.    The total monthly payment to CDFI will be approximately $6,460
2  including both principal (as requested) and interest (as previously ordered paid).  It
3  is estimated that with the increased payment amount, the Loan will not be fully
4  repaid until approximately November 2013 (see attached amortization schedule at
5  Exhibit E).

6

7      I declare under penalty of perjury under the law of the United States of
8  America and the State of California that the foregoing is true and correct.

9      Executed this __ day of July, 2010 at Lake Forest, California.

10

11

12                                KRISTY OLLENDORFF

FRANKEL & TENNANT PROFESSIONAL CORPORATION
895 Dove Street, Suite 119, Newport Beach, CA 92660
Tel: (949) 222-3456  Fax: (949) 222-3453

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Declaration of Kristy Ollendorff in Support of Motion**          ORIGINAL DOCUMENT
**for Order Increasing Payments From the Receivership**        PREPARED ON RECYCLED PAPER

# EXHIBIT A

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $150,000.00 | 04-04-2008 | 05-01-2009 | 08564 | | | | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "*****" has been omitted due to text length limitations.

| Borrower: | Mark S. Adams, Attorney at Law<br>3436 Ocean Park Blvd #107<br>Santa Monica, CA 90405 | Lender: | Clearinghouse Community Development Financial<br>Institution<br>23861 El Toro Road, Suite 401<br>Lake Forest, CA 92660 |
|---|---|---|---|

**Principal Amount: $150,000.00**      **Interest Rate: 8.500%**      **Date of Note: April 4, 2008**

**PROMISE TO PAY.** Mark S. Adams, Attorney at Law ("Borrower") promise to pay to Clearinghouse Community Development Financial Institution ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Fifty Thousand & 00/100 Dollars ($150,000.00), or so much as may be outstanding, together with interest at the rate of 8.500% per annum on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on May 1, 2009. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning May 1, 2008, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid collection costs; then to any late charges; then to any accrued unpaid interest; and then to principal. Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the annual interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Farmers & Merchants Bank, 302 Pine Ave. Long Beach, CA 90802.

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $15.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, the interest rate on this Note shall, if permitted under applicable law, immediately increase by 2.000 percentage points.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in its sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**PROMISSORY NOTE**
**(Continued)**

Loan No: 08-564                                                                 Page 2

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $15.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**COLLATERAL.** This loan is unsecured.

**LINE OF CREDIT.** This Note evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. Advances under this Note, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer printouts.

**ARBITRATION.** Borrower and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Note or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any collateral securing this Note shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any collateral securing this Note, including any claim to rescind, reform, or otherwise modify any agreement relating to the collateral securing this Note, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Borrower and Lender agree that in the event of an action for judicial foreclosure pursuant to California Code of Civil Procedure Section 726, or any similar provision in any other state, the commencement of such an action will not constitute a waiver of the right to arbitrate and the court shall refer to arbitration as much of such action, including counterclaims, as lawfully may be referred to arbitration. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Note shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE.**

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

BORROWER:

X _____
Mark S. Adams, Attorney at Law

LASER PRO Lending, Ver. 5.50.00.004   Copr. Harland Financial Solutions, Inc. 1997, 2008.   All Rights Reserved.   - CA   J:\CFI\LPL\D20.FC   TR-9335   PR-39

# EXHIBIT B

# BUSINESS LOAN AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call/Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-----------|---------|---------|----------|
| $150,000.00 | 04-04-2008 | 05-01-2009 | 08-564 | | | | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  Mark S. Adams, Attorney at Law
3435 Ocean Park Blvd #107
Santa Monica, CA 90405

**Lender:**  Clearinghouse Community Development Financial
Institution
23861 El Toro Road, Suite 401
Lake Forest, CA  92630

THIS BUSINESS LOAN AGREEMENT dated April 4, 2008, is made and executed between Mark S. Adams, Attorney at Law ("Borrower") and Clearinghouse Community Development Financial Institution ("Lender") on the following terms and conditions. Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement. ("Loan"). Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying on Borrower's representations, warranties, and agreements as set forth in this Agreement; (B) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and (C) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

TERM. This Agreement shall be effective as of April 4, 2008, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until May 1, 2009.

CONDITIONS PRECEDENT TO EACH ADVANCE. Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

Loan Documents. Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) guaranties; (3) together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

Payment of Fees and Expenses. Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

Representations and Warranties. The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

No Event of Default. There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

REPRESENTATIONS AND WARRANTIES. Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

Business Activities. Borrower maintains an office at 3435 Ocean Park Blvd #107, Santa Monica, CA  90405. Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral. Borrower will notify Lender prior to any change in the location of Borrower's principal office address or any change in Borrower's name. Borrower shall do all things necessary to comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

Assumed Business Names. Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business: None.

Authorization. Borrower's execution, delivery, and performance of this Agreement and all the Related Documents do not conflict with, result in a violation of, or constitute a default under (1) any provision of any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

Financial Information. Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

Legal Effect. This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

Properties. Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

Hazardous Substances. Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal,

Loan No: 08-584

# BUSINESS LOAN AGREEMENT
## (Continued)

Page 2

release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

**Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

**Taxes.** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior to or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with such financial statements and other related information at such frequencies and in such detail as Lender may reasonably request.

**Additional Information.** Furnish such additional information and statements, as Lender may request from time to time.

**Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and, (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Guaranties.** Prior to disbursement of any Loan proceeds, furnish executed guaranties of the Loans in favor of Lender, executed by the guarantor named below, on Lender's forms, and in the amount and under the conditions set forth in those guaranties.

| Name of Guarantor | Amount |
|---|---|
| Mark S. Adams, Attorney at Law | $150,000.00 |

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Loan Proceeds.** Use all Loan proceeds solely for the following specific purposes: These funds are only for the exclusive use on the Duroville Mobile Home Park located on Pierce Street, Thermal CA.,.

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Operations.** Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

**Environmental Studies.** Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Compliance with Governmental Requirements.** Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized. Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books,

# BUSINESS LOAN AGREEMENT
## (Continued)

accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Compliance Certificates.** Unless waived in writing by Lender, provide Lender at least annually, with a certificate executed by Borrower's chief financial officer, or other officer or person acceptable to Lender, certifying that the representations and warranties set forth in this Agreement are true and correct as of the date of the certificate and further certifying that, as of the date of the certificate, no Event of Default exists under this Agreement.

**Environmental Compliance and Reports.** Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Indebtedness and Liens.** (1) Except for trade debt incurred in the normal course of business and Indebtedness to Lender contemplated by this Agreement, create, incur or assume Indebtedness for borrowed money, including capital leases, (2) sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets (except as allowed as Permitted Liens), or (3) sell with recourse any of Borrower's accounts, except to Lender.

**Continuity of Operations.** (1) Engage in any business activities substantially different than those in which Borrower is presently engaged, or (2) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change ownership, dissolve or transfer or sell Collateral out of the ordinary course of business.

**Loans, Acquisitions and Guaranties.** (1) Loan, invest in or advance money or assets to any other person, enterprise or entity, (2) purchase, create or acquire any interest in any other enterprise or entity, or (3) incur any obligation as surety or guarantor other than in the ordinary course of business.

**Agreements.** Borrower will not enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

**CESSATION OF ADVANCES.** If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if: (A) Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender; (B) Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt; (C) there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or (D) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Loan.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's or any Grantor's ability to repay the Loans or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if

# BUSINESS LOAN AGREEMENT
## (Continued)

there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default on Indebtedness, is curable and if Borrower or Grantor, as the case may be, has not been given a notice of a similar default within the preceding twelve (12) months, it may be cured if Borrower or Grantor, as the case may be, after receiving written notice from Lender demanding cure of such default: (1) cure the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**EFFECT OF AN EVENT OF DEFAULT.** If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Arbitration.** Borrower and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Agreement or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any Collateral shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Collateral, including any claim to rescind, reform, or otherwise modify any agreement relating to the Collateral, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Borrower and Lender agree that in the event of an action for judicial foreclosure pursuant to California Code of Civil Procedure Section 726, or any similar provision in any other state, the commencement of such an action will not constitute a waiver of the right to arbitrate and the court shall refer to arbitration as much of such action, including counterclaims, as lawfully may be referred to arbitration. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Agreement shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**Attorneys' Fees; Expenses.** Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Consent to Loan Participation.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests. Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of California.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender

and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.** Borrower understands and agrees that in extending Loan Advances, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the extension of Loan Advances and delivery to Lender of the Related Documents, shall be continuing in nature, shall be deemed made and redated by Borrower at the time each Loan Advance is made, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement:

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

**Agreement.** The word "Agreement" means this Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time.

**Borrower.** The word "Borrower" means Mark S. Adams, Attorney at Law and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq., ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Clearinghouse Community Development Financial Institution, its successors and assigns.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and

**Loan No: 08-564**

# BUSINESS LOAN AGREEMENT
## (Continued)

however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

**Note.** The word "Note" means the Note executed by Mark S. Adams, Attorney at Law in the principal amount of $150,000.00 dated April 4, 2008, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Permitted Liens.** The words "Permitted Liens" mean (1) liens and security interests securing indebtedness owed by Borrower to Lender; (2) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith; (3) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (4) purchase money liens or purchase money security interests upon or in any property acquired or held by Borrower in the ordinary course of business to secure indebtedness outstanding on the date of this Agreement or permitted to be incurred under the paragraph of this Agreement titled "Indebtedness and Liens"; (5) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing; and (6) those liens and security interests which in the aggregate constitute an immaterial and insignificant monetary amount with respect to the net value of Borrower's assets.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

**BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS BUSINESS LOAN AGREEMENT IS DATED APRIL 4, 2008.**

**BORROWER:**

X _____
Mark S. Adams, Attorney at Law

**LENDER:**

X
CLEARINGHOUSE COMMUNITY DEVELOPMENT FINANCIAL INSTITUTION

By: _____
Authorized Signer

# EXHIBIT C

# CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $150,000.00 | 04-04-2008 | 05-01-2009 | 08-564 | | | | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Mark S. Adams, Attorney at Law
5435 Ocean Park Blvd #107
Santa Monica, CA 90405

**Lender:** Clearinghouse Community Development Financial
Institution
23861 El Toro Road, Suite 401
Lake Forest, CA 92830

---

**Principal Amount: $150,000.00          Interest Rate: 8.500%          Date of Agreement: June 4, 2008**

**DESCRIPTION OF EXISTING INDEBTEDNESS.** A loan evidenced by a promissory note dated 04/04/2008, in the original amount of $150,000.00 and referencing loan number 08-564("Note"). The outstanding principal balance due under the Note, as of the date of this Agreement, is $149,420.00 .

**DESCRIPTION OF COLLATERAL.** A person guaranty by Mark Adams for $150,000.00.

**DESCRIPTION OF CHANGE IN TERMS.** The "Line of Credit" paragraph is modified as follows: The amount available to Borrower under the line of credit evidenced by the Note is hereby increased from $150,000.00 to $220,000.00. Accordingly, the principal amount of the Note is hereby increased to $220,000.00 Borrower promises to pay Lender, or order, the principal amount of $220,000.00      or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance made under the Note.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on May 1, 2009. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning May 1, 2008, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid collection costs; then to any late charges; then to any accrued unpaid interest; and then to principal. Interest on this loan is computed on a 365/365 simple interest basis; that is, by applying the ratio of the annual interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law.  Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender.  All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Farmers & Merchants Bank, 302 Pine Ave. Long Beach, CA  90802.

**LATE CHARGE.** If a payment is 15 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $15.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, the interest rate on this loan shall, if permitted under applicable law, immediately increase by 2.000 percentage points.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to perform Borrower's obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The death of Borrower or the dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all

# CHANGE IN TERMS AGREEMENT
## (Continued)

Loan No: 03-884

Page 2

reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of California.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $15.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**COLLATERAL.** This Indebtedness is unsecured.

**LINE OF CREDIT.** This Agreement evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. Advances under this Agreement, as well as directions for payment from Borrower's accounts, may be requested orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Agreement at any time may be evidenced by endorsements on this Agreement or by Lender's internal records including daily computer print-outs.

**ARBITRATION.** Borrower and Lender agree that all disputes, claims and controversies between them whether individual, joint, or class in nature, arising from this Agreement or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon request of either party. No act to take or dispose of any Collateral shall constitute a waiver of this arbitration agreement or be prohibited by this arbitration agreement. This includes, without limitation, obtaining injunctive relief or a temporary restraining order; invoking a power of sale under any deed of trust or mortgage; obtaining a writ of attachment or imposition of a receiver; or exercising any rights relating to personal property, including taking or disposing of such property with or without judicial process pursuant to Article 9 of the Uniform Commercial Code. Any disputes, claims, or controversies concerning the lawfulness or reasonableness of any act, or exercise of any right, concerning any Collateral, including any claim to rescind, reform, or otherwise modify any agreement relating to the Collateral, shall also be arbitrated, provided however that no arbitrator shall have the right or the power to enjoin or restrain any act of any party. Borrower and Lender agree that in the event of an action for judicial foreclosure pursuant to California Code of Civil Procedure Section 726, or any similar provision in any other state, the commencement of such an action will not constitute a waiver of the right to arbitrate and the court shall refer to arbitration as much of such action, including counterclaims, as lawfully may be referred to arbitration. Judgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction. Nothing in this Agreement shall preclude any party from seeking equitable relief from a court of competent jurisdiction. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding, and the commencement of an arbitration proceeding shall be deemed the commencement of an action for these purposes. The Federal Arbitration Act shall apply to the construction, interpretation, and enforcement of this arbitration provision.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the Indebtedness.

**MISCELLANEOUS PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

**BORROWER:**

X _____
Mark S. Adams, Attorney at Law

# EXHIBIT D

Summarization of Financial Information contained in Duroville Receivership Reports

**Participants In Later Program**

| Month | Apr-09 | May-09 | Jun-09 | Jul-09 | Aug-09 | Sep-09 | Oct-09 | Nov-09 | Dec-09 | Jan-10 | Feb-10 | Mar-10 | Apr-10 | May-10 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Participants | | 32 | 42 | 42 | 43 | 44 | 68 | 70 | 73 | 79 | 79 | 85 | 85 | 84 |
| Current Rent & Utilities | | $102,136 | $112,029 | $123,909 | $77,626 | $85,446 | $93,808 | $109,110 | $91,506 | $103,186 | $99,659 | $116,997 | $92,031 | $94,571 |
| Back Rent Estimate | | 2,400 | 3,150 | 3,150 | 3,225 | 3,300 | 5,100 | 5,250 | 5,475 | 5,925 | 5,925 | 6,375 | 6,375 | 6,300 |
| Cash Receipts | 68,657 | 104,536 | 115,179 | 127,059 | 80,851 | 88,746 | 98,908 | 114,360 | 96,981 | 109,111 | 105,584 | 123,372 | 98,406 | 100,871 |
| Payroll | | 19,120 | 25,095 | 20,607 | 25,956 | 19,654 | 21,761 | 26,329 | 22,780 | 22,758 | 22,129 | 28,137 | 23,211 | 29,812 |
| Payroll Related | | 15,898 | 12,751 | 11,143 | 13,334 | 12,155 | 10,540 | 12,873 | 12,193 | 14,202 | 9,338 | 18,114 | 13,084 | 13,678 |
| Management Fee Flynn | | 7,500 | 7,500 | 9,200 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 |
| Reimbursable Fees | | 8,538 | | | | | | | | | | | | |
| Harvey Duro | | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Utilities | | 17,347 | 17,501 | 15,686 | 29,427 | 28,963 | 34,364 | 27,639 | 26,267 | 14,575 | 15,522 | 18,890 | 15,409 | 14,888 |
| Outside Services | | 7,780 | 8,865 | | | | 1,500 | 185 | 1,562 | 2,500 | 5,804 | | 889 | |
| Trash & Refuse Removal | | 5,800 | 11,453 | 7,474 | 7,575 | 2,947 | 3,584 | 2,948 | 3,168 | 10,175 | 4,386 | 5,845 | 2,900 | 4,826 |
| Storage & Equipment Rental | | 5,199 | 10,684 | 4,612 | 3,433 | 4,828 | 2,447 | 2,970 | 10,843 | 17,820 | 13,714 | 14,872 | 14,349 | 12,948 |
| Legal & Professional | | 8,996 | 7,102 | 9,337 | | | 160 | 4,704 | | | | | | |
| Permits & Licenses | | 349 | | | | | | | | | 20 | 247 | | |
| Security | | 3,000 | 3,000 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,590 | 5,500 | 5,500 | 5,500 |
| Repairs & Maintenance | | 904 | 2,590 | 10,384 | 2,875 | 2,199 | 2,891 | 1,208 | 6,417 | 4,917 | 4,361 | 5,381 | 4,145 | 1,374 |
| Office & Miscellaneous | | 390 | 1,671 | 7,334 | | 971 | 685 | 307 | 2,936 | 1,763 | 3,513 | 2,277 | 1,272 | 1,161 |
| Petty Cash | | 3,482 | 2,847 | 3,705 | 238 | 398 | 1,040 | 150 | 2,113 | 393 | 105 | 235 | 252 | 282 |
| Interest | | | 3,215 | | 1,333 | 1,532 | 1,584 | 1,584 | 1,533 | 2,661 | 1,584 | 1,431 | 1,584 | 1,538 |
| Total Disbursements | not provided | 95,003 | 116,074 | 106,952 | 99,241 | 88,668 | 98,736 | 98,897 | 107,810 | 109,164 | 96,426 | 113,409 | 95,095 | 98,422 |
| Operating Income (Loss) | | $9,533 | -$895 | $20,107 | -$18,390 | $78 | $172 | $15,463 | -$10,829 | -$53 | $9,158 | $9,963 | $3,311 | $2,449 |

Notes: Cash Basis Statements with No adjustments for Receivables or Payables
Back Rent component of Cash Receipts estimated at $75.00 per participant

# EXHIBIT E

# AMORTIZATION SCHEDULE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $219,417.00 | 07-14-2010 | 11-01-2013 | 08564 | | | | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Mark Adams attorney at law
3435 Ocean Park Blvd. #112
Santa Monica, CA 90405

**Lender:** Clearinghouse Community Development Financial Institution
23861 El Toro Road, Suite 401
Lake Forest, CA 92630

Disbursement Date: August 1, 2010
Interest Rate: 8.500

Repayment Schedule: Installment
Calculation Method: 365/365 U.S. Rule

| Payment Number | Payment Date | Payment Amount | Interest Paid | Principal Paid | Remaining Balance |
|---|---|---|---|---|---|
| 1 | 09-01-2010 | 6,459.68 | 1,584.01 | 4,875.67 | 214,541.33 |
| 2 | 10-01-2010 | 6,459.68 | 1,498.85 | 4,960.83 | 209,580.50 |
| 3 | 11-01-2010 | 6,459.68 | 1,513.00 | 4,946.68 | 204,633.82 |
| 4 | 12-01-2010 | 6,459.68 | 1,429.63 | 5,030.05 | 199,603.77 |
| **2010 TOTALS:** | | **25,838.72** | **6,025.49** | **19,813.23** | |
| 5 | 01-01-2011 | 6,459.68 | 1,440.98 | 5,018.70 | 194,585.07 |
| 6 | 02-01-2011 | 6,459.68 | 1,404.74 | 5,054.94 | 189,530.13 |
| 7 | 03-01-2011 | 6,459.68 | 1,235.84 | 5,223.84 | 184,306.29 |
| 8 | 04-01-2011 | 6,459.68 | 1,330.54 | 5,129.14 | 179,177.15 |
| 9 | 05-01-2011 | 6,459.68 | 1,251.79 | 5,207.89 | 173,969.26 |
| 10 | 06-01-2011 | 6,459.68 | 1,255.92 | 5,203.76 | 168,765.50 |
| 11 | 07-01-2011 | 6,459.68 | 1,179.05 | 5,280.63 | 163,484.87 |
| 12 | 08-01-2011 | 6,459.68 | 1,180.23 | 5,279.45 | 158,205.42 |
| 13 | 09-01-2011 | 6,459.68 | 1,142.11 | 5,317.57 | 152,887.85 |
| 14 | 10-01-2011 | 6,459.68 | 1,068.12 | 5,391.56 | 147,496.29 |
| 15 | 11-01-2011 | 6,459.68 | 1,064.80 | 5,394.88 | 142,101.41 |
| 16 | 12-01-2011 | 6,459.68 | 992.76 | 5,466.92 | 136,634.49 |
| **2011 TOTALS:** | | **77,516.16** | **14,546.88** | **62,969.28** | |
| 17 | 01-01-2012 | 6,459.68 | 986.39 | 5,473.29 | 131,161.20 |
| 18 | 02-01-2012 | 6,459.68 | 946.88 | 5,512.80 | 125,648.40 |
| 19 | 03-01-2012 | 6,459.68 | 848.56 | 5,611.12 | 120,037.28 |
| 20 | 04-01-2012 | 6,459.68 | 866.57 | 5,593.11 | 114,444.17 |
| 21 | 05-01-2012 | 6,459.68 | 799.54 | 5,660.14 | 108,784.03 |
| 22 | 06-01-2012 | 6,459.68 | 785.33 | 5,674.35 | 103,109.68 |
| 23 | 07-01-2012 | 6,459.68 | 720.36 | 5,739.32 | 97,370.36 |
| 24 | 08-01-2012 | 6,459.68 | 702.93 | 5,756.75 | 91,613.61 |
| 25 | 09-01-2012 | 6,459.68 | 661.37 | 5,798.31 | 85,815.30 |
| 26 | 10-01-2012 | 6,459.68 | 599.53 | 5,860.15 | 79,955.15 |
| 27 | 11-01-2012 | 6,459.68 | 577.21 | 5,882.47 | 74,072.68 |
| 28 | 12-01-2012 | 6,459.68 | 517.49 | 5,942.19 | 68,130.49 |
| **2012 TOTALS:** | | **77,516.16** | **9,012.16** | **68,504.00** | |
| 29 | 01-01-2013 | 6,459.68 | 491.85 | 5,967.83 | 62,162.66 |
| 30 | 02-01-2013 | 6,459.68 | 448.76 | 6,010.92 | 56,151.74 |
| 31 | 03-01-2013 | 6,459.68 | 366.14 | 6,093.54 | 50,058.20 |
| 32 | 04-01-2013 | 6,459.68 | 361.38 | 6,098.30 | 43,959.90 |
| 33 | 05-01-2013 | 6,459.68 | 307.12 | 6,152.56 | 37,807.34 |
| 34 | 06-01-2013 | 6,459.68 | 272.94 | 6,186.74 | 31,620.60 |
| 35 | 07-01-2013 | 6,459.68 | 220.91 | 6,238.77 | 25,381.83 |
| 36 | 08-01-2013 | 6,459.68 | 183.24 | 6,276.44 | 19,105.39 |
| 37 | 09-01-2013 | 6,459.68 | 137.93 | 6,321.75 | 12,783.64 |
| 38 | 10-01-2013 | 6,459.68 | 89.31 | 6,370.37 | 6,413.27 |
| 39 | 11-01-2013 | 6,459.68 | 46.41 | 6,413.27 | 0.00 |
| **2013 TOTALS:** | | **71,056.48** | **2,925.99** | **68,130.49** | |
| **TOTALS:** | | **251,927.52** | **32,510.52** | **219,417.00** | |

**NOTICE:** This is an estimated loan amortization schedule. Actual amounts may vary if payments are made on different dates or in different amounts.

LASER PRO Lending, Ver. 5.46.00.003 Copr. Harland Financial Solutions, Inc. 1997, 2010. All Rights Reserved. - CA TR-611 PR-28

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF ORANGE

I, Shane E. Coons, hereby declare:

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is: Frankel & Tennant Professional Corporation, 895 Dove Street, Suite 119, Newport Beach CA 92660. I am employed in the office of a member of the bar of this court at whose direction the service was made. I have personal knowledge of the matters set forth herein, and, if necessary could and would testify competently thereto.

On August 9, 2010, I served the foregoing document described as DECLARATION OF KRISTY OLLENDORFF IN SUPPORT OF MOTION FOR ORDER INCREASING PAYMENTS TO CLEARINGHOUSE COMMUNITY DEVELOPMENT FINANCIAL INSTITUTION FROM CERTAIN PROCEEDS FROM THE RECEIVERSHIP OF DESERT MOBILEHOME PARK, INC. on all interested parties in this action by placing true copies thereof in the U.S. Mail, enclosed in sealed envelopes, with postage thereon fully prepaid, addressed as stated on the attached mailing list:

**[SEE ATTACHED SERVICE LIST]**

I personally deposited such envelopes in the mail at Newport Beach, California.

I also served the foregoing document via EMAIL on each of the following:
Jon.klinck@usdoj.gov
Monica. miller@usdoj.gov
szundellaw@msn.com
arrodriguez@crla.org
cgs@cgslaw.com
ijacobs@crla.org
cberkey@abwwlaw.com
swilliams@abwwlaw.com
terry.jennifer@arentfox.com
madams@calreceivers.com

Each envelope was mailed to the addressees on the attached service list with postage thereon fully prepaid.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that this declaration was executed on August 9, 2010.

SHANE E. COONS

## SERVICE LIST
### United States of America v. Harvey Duro, et al.
### US District Court Central District of California
### Case No. EDCV07-1309 SGL (JCRx)

### Plaintiff's Counsel

Jonathan B. Klinck, AUSA
Office of the United States Attorney
Civil Division
300 N Los Angeles Street Ste 7516
Los Angeles CA 90012

Monica L. Miller, AUSA
Office of the United States Attorney
Civil Division
300 N Los Angeles Street Ste 7516
Los Angeles CA 90012

### Defendants' Counsel

J. Scott Zundel
74-000 Country Club Dr Ste C-4
Palm Desert CA 92260

### Intervenor Defendants' Counsel

Arturo Rodriguez
California Rural Legal Assistance Inc.
1460 Sixth St
PO Box 35
Coachella CA 92236

Chandra G. Spencer
Chandra Gehri Spencer Law Offices
445 S Figueroa St Ste 2700
Los Angeles CA 90071

Ilene J. Jacobs
California Rural Legal Assistance
511 D Street
PO Box 2600 Marysville CA 95901-2600

### Receiver

Mark S. Adams
3435 Ocean Park Blvd Ste 112
Santa Monica CA 90405

### Special Master Prosper

Jennifer Cannon Terry
Arent Fox
555 West Fifth St Fl 48
Los Angeles CA 90071

### Amicus

Clinton Burr
10 South Riverside Plaza Ste 1800
Chicago Il 60606

Curtis Gene Berkey
Alexander Berkey Williams
2030 Addison St Ste 410
Berkeley CA 94704

### Jose Luis Crisantos Pro Se
Jose Luis Crisantos
68800 Hwy 195
PO Box 198
Thermal CA 92274