J. Scott Zundel, Esq.
State Bar No 63303
J. SCOTT ZUNDEL
LAW OFFICES
74-000 Country Club Drive Suite C-4
Palm Desert California 92260
(760) 568-0387 Telephone
(760) 423-0623 Facsimile
Attorney for Defendants Harvey Duro, Sr.,
and DESERT MOBILEHOME PARK INC., a California corporation

## UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>**Plaintiff,**<br>v<br>**HARVEY DURO, SR. and DESERT MOBILEHOME PARK, INC., a California corporation,**<br>**Defendants** | NO.  EDCV 07-1309 SGL (JCRx)<br><br>**DEFENDANT'S RESPONSE TO CDFI'S MOTION FOR ORDER INCREASING PAYMENTS FROM CERTAIN PROCEEDS OF THE RECEIVERSHIP OF DESERT MOBILEHOME PARK, INC.** |

Defendants, Harvey Duro Sr., and Desert Mobilehome Park, hereinafter, "Defendants", respectfully submit their response to Clearinghoue Community Development Financial Institution's motion for order increasing payments from certain proceeds of the receivership of Desert Mobilehomd Park, Inc. ("Motion")

**I**
**INTRODUCTION**

On February 11, 2008, the Court appointed two Special Masters and a Provisional Receiver (collectively referred to as the Study

1 Group) and ordered the Study Group to, *inter alia*, investigate the
2 conditions at desert Mobilehomd Park and report back to the Court.
3 February 11, 2008 Order (docket #59), a copy of which is attached
4 as Exhibit A.  The February 11, 2008 Order also specified that the
5 Study Group would "be paid their costs and reasonable fees for
6 their services" and noted that "the Provisional Receiver has
7 secured a $150,000.00 line of credit from Clearinghouse CDFI . . .
8 " **Id at 3**.  On May 1, 2008 the Court granted the United State's
9 motion for preliminary injunction, in part incorporating the
10 findings of the Study group.  May 1, 2008 Order (docket #87) a copy
11 of which is attached as Exhibit B.  On May 23, 2008, the Court
12 found that the Study Group's costs and fees were $122,000.00 and
13 ordered defendants to pay the Study Group by July 1, 2008.  May 23,
14 2008 Order (docket #96), a copy of which is attached as Exhibit C.
15      After granting the preliminary injunction, the Court entered
16 into ex parte communications with the various parties and non-party
17 entities because such communications "could be helpful in
18 facilitation compliance with the Court's May 1, 2008 Order
19 [granting preliminary injunction]."  June 25, 2008 Order (docket #
20 101) attached hereto as Exhibit D, at 1.  Mr. Adams filed his
21 Application for Order Directing Reimbursement of Receivership
22 Advances and Expenses on May 8, 2009 (docket #229.)  The
23 application was supported by Declaration of Kristy Ollendorff
24 (docket #239), a copy of which is attached as Exhibit E.  Then, on
25 October 1, 2009, the Court denied Mr. Adam's request for additional
26 fees, and addressed the CDFI loan as follows:
27      The Receiver [Mr. Flynn] reports that he has had an
28           inquiry from CDFI regarding repayment of the loan

2

1  guaranteed by the former Receiver Mark Adams.  The Court
2  held a hearing on the related matter of payment to Mr.
3  Adams for his services on July 6, 2009, at which time the
4  Court expressed its concern regarding repayment of the
5  CDFI loan, much of which, but not all of which was paid
6  to Mr. Adams for his services, and which loan Mr. Adams
7  had personally and voluntarily secured and guaranteed.
8  Based on the July 6, 2009 herein, the evidence before the
9  Court on ths matter, and the entire record, the Court
10 DENIES Mr. Adam's application for order directing
11 reimbursement (Docket #229)
12 October 1, 2009 Order (docket #248), a copy of which is attached as
13 Exhibit F.

14                                II.

15 **THERE CAN BE NO ENCUMBRANCE OF AN INDIAN TRUST ALLOTMENT**
16 **WITHOUT THE APPROVAL OF THE SECRETARY OF THE INTERIOR -NO**
17 **SECRETARIAL APPROVAL HAS BEEN GRANTED TO CDFI RELATING TO MR.**
18 **DURO'S ALLOTMENT**

19     Defendants were not present during the ex parte communications
20 between the Court and Mr. Adams and CDFI, or with those with
21 Plaintiff.  Defendants are not privy to any loan agreement between
22 CDFI and Mr. Adams, or with Plaintiff. Since Defendants were not a
23 party to any loan agreement with CDFI and since the record is
24 devoid of any approval of the loan agreement by Plaintiff or
25 Defendants, Defendants dispute that such a loan exists obligating
26 Defendants.

27     Defendant Duro's allotment is owned by the United States for
28

the beneficial use of Defendant Duro, who is an Indian allotee.[1] Defendant, Duro is a member of the Torres Martinez Band of Mission Indians, a federally recognized Indian Tribe.  In addition to the allotments, the Torres-Martinez Reservation as a whole is owned in trust by the United States for the benefit and occupancy of the Tribe and its members.  Johnson v McIntosh, 21 U.S. 543 (1823), Oneida Indian Nation v County of Oneida, 414 U.S. 661 (1974).

    Defendants were not present during all the Court's ex parte contacts and thus cannot determine whether the Plaintiff approved the CDFI loan.  Nevertheless, it appears from the record and the documents submitted by Plaintiff, CDFI, that Mr. Adams signed the loan documents.  The record is also clear that no loans were approved by the Secretary of the Interior-the absolute Indian Trustee-as required by Congress.  See, 25 U.S.C. Section 1, et seq. Accordingly, to the extent the CDFI loan purports to be an encumbrance on Mr. Duro's allotment, it cannot be imposed, because any such encumbrance on federal trust allotment must have Secretarial approval.  25 U.S.C. Section 348.  The language of Section 348 prohibits any conveyance by the Indian without Secretarial approval; without such approval, the encumbrance is null and void. See, e.g., Taylor v Parker, 235 U.S. 42 (1014); Sage v Hampe, 235 U. S. 99, (1914); Starr v Long Jim, 227 U.S. 613 (1913); Heckman v United States, 224 U. S. 413 416 (1911); United States v Walters, 17 F.2nd 116 (1926).

---

[1]The General Allotment of 1887, 25 U.S.C. Section 331 et seq.

4

1    In <u>Mullen v Simmons</u>, 234 U.S. 192, 197-199 (1914) the Supreme
2 Court discussed the legal proposition that alienation of restricted
3 India land, without the consent of the Secretary, is void.  This
4 principal was elaborated in <u>United States v Emmons</u>, 351 F.2d 603
5 (9th Cir 1965), which held that section348 made any such purported
6 conveyance of Indian lands without Secretarial approval "or any
7 contract touching the same" during the trust period "shall be
8 absolutely null and void." Id at 604. The <u>Emmons</u> Court concluded
9 that provision "makes a hold of absolute nullity mandatory." Id.
10 Similarly, in <u>Lawrence v United States</u>, 381 F. 2nd 989 (9th Cir.
11 1967) (an attempt to enforce an oral contract to enter into a long-
12 term lease) the Court, again in interpreting section 348, concluded
13 that such agreements are "void."[2]  The legal history of 25 U.S.C.
14 Section 348 makes it clear the federal trust allotments cannot be
15 encumbered without the approval of the Secretary of the Interior.
16    Moreover, in addition to raising the issue that there can be
17 no encumbrance of Indian trust land without approval of the
18 Secretary of the Interior, it should be clarified that CDFI's
19 statement in Motion at p. 8, that the rental income from Mr. Duro's
20 allotment must be administered in accordance with California law,
21 is contrary to the Ninth Circuit law.  Segundo v City of Rancho
22 Mirage, 813 F.2nd 1387 (9th Cir. 1987( held that in matters
23 involving the leasing of Indian land, the Department of the

---

[2] For other prohibitive restrictions, seek also, <u>Lykins v McGrath</u>, 184 U.S. 169 (1902); <u>United States v First National Bank of Yakima, Washington</u>, 282 Fed. 330 (1922))(mortgages were prohibited until allowed by Congress in 1956, 25 U.S.C. 483a); <u>United States v Walters</u>, 17 F2nd 116 (D.C. Minn. 1926) (conveyance by Indian prior to the expiration of the trust period is against public policy).

Interior regulation 25 C.F.R. Part 162 has preempted any other state civil jurisdiction. Additionally, Section 348 specifically states the trust land shall be held "in trust for the sole use and benefit of the Indian to whom such allotment shall have been made." 25 U.S.C. Section 348.  See also, United States v Mitchell, 463 U.S. 206, (1983), Hoppa Valley v Ryan, et al., 415 F. 3d. 986, 390 (9th Cir. 2005)[3] "

### III
### ADDITIONAL ARGUMENT PURSUANT TO INSTRUCTION OF CLIENT

I have been directed by Defendant, Harvey Duro to make those arguments set forth in the attached G which is incorporated herein as those fully set forth herein.

### IV
### CONCLUSION

There can be no encumbrance of alloted Indian land without the approval of the Secretary of the Interior, and all aspects of Indian trust lands, including the proceeds of trust lands, are subject to federal law.

---

[3] In United States v Mitchell, 463 U.S. 206, 255 (1983) (a matter involving timber on an Indian allotment) the Supreme Court ruled that "a fiduciary relationship necessarily arises when the government assumes elaborate control over . . . property belonging to Indians.  All of the necessary elements of a common-law trust are present; a trustee (United States), a beneficiary (the Indian allotee), and a trust corpus (timber, lands, money)"

Dated: August 31, 2010            LAW OFFICES OF J. SCOTT ZUNDEL
                                  BY

                                  S/J. SCOTT ZUNDEL
                                  J. SCOTT ZUNDEL, ESQ. ATTORNEY
                                  DEFENDANTS, HARVEY DURO SR. and
                                  DESERT MOBILEHOME PARK, INC., a
                                  California corporation