ARTURO RODRIGUEZ, SBN 116541
MEGAN BEAMAN CARLSON, SBN 261539
CALIFORNIA RURAL LEGAL ASSISTANCE, INC.
P.O. Box 35/1460 Sixth Street
Coachella, CA 92236
Tel: (760) 398-7261
Fax: (760) 398-1050
arrodriguez@crla.org

ILENE J. JACOBS, SBN 126812
CALIFORNIA RURAL LEGAL ASSISTANCE, INC.
511 "D" Street, P.O. Box 2600
Marysville, CA 95901
Tel: (530) 742-7235
Fax: (530) 741-0854
ijacobs@crla.org

Additional Counsel Listed on Second Page

Attorneys for Interveners/Defendants CRUZ NAVARRO, DELFINA OCHOA and ORBELINA ESCOBAR

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>HARVEY DURO, Sr., et al.,<br><br>Defendants.<br><br>———————————————<br><br>CRUZ NAVARRO, DELFINA OCHOA and ORBELINA ESCOBAR,<br><br>Interveners/Defendants. | CASE NO.: EDCV07-1309 DTB<br><br>**INTERVENERS' OPPOSITION TO MOTION FOR ORDER INCREASING PAYMENTS TO CLEARINGHOUSE COMMUNITY DEVELOPMENT FINANCIAL INSTITUTION FROM COURT RECEIVERSHIP**<br><br>Hearing Date: Vacated<br>Courtroom 4<br>Hon. David T. Bristow |

1  CHANDRA GEHRI SPENCER, SBN 184010
   A Professional Law Corporation
2  445 S. Figueroa Street, Suite 2700
   Los Angeles, CA 90071
3  Tel: (213) 489-6826
   Fax: (818) 597-3288
4  cgs@cgslaw.com

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Intervener's submit this brief in opposition to the motion of Clearinghouse Community Development Financial Institution (CDFI) for an order increasing payments to CDFI from the court appointed receivership. Interveners' oppose CDFI's motion on the following grounds:

1. CDFI is not a party to this action and lacks standing to seek modification of court orders in this matter;

2. Contrary to CDFI's position, the loan proceeds from CDFI's two loans to Mark Adams, the Court's initial Provisional Receiver, did not retire the full $220,000 court ordered debt owed to the Court appointed Study Group, as only Mark Adams has been paid in full. Special Masters Jack Shine and Ambassador Pierre-Richard Prosper were only paid portions of their court approved fees;

3. The Imperial Irrigation District (IID), which provides electricity to the mobilehome park, is owed approximately $100,000.00 and part of this debt must be liquidated or reduced before the Court considers ordering the Receiver to undertake principal payments to CDFI;

4. The park is still in need of improvements which were outlined by the Court in its Order of April 30, 2009 which include, at a minimum, removal of the debris along the south side of the park, upgrade of the park's fire suppression system and addressing the arsenic contamination of the park's water (a problem which effects the entire Eastern Coachella Valley);

5. The income generated by the park is unpredictable and is likely to significantly decrease as we approach the two-year anniversary of the receivership on April 30, 2011;

6. The income generated by the park is likely to significantly decrease as completion of the Mountain View Estates mobilehome park draws near and park residents are relocated to the new facility.

///
///

## I. Introduction/Statement of Facts

On April 30, 2009, this Court issued its Order Re Remedies After Bench Trial. (Docket No. 226, April 30, 2009.)[1] In Section V of the Order, the Court recognized "from the evidence at trial that, at present, Mr. Duro is unable to pay the principal of the CDFI line of credit. In the interest of justice the Court orders that the interest on that loan, approximately $1,600 per month, be paid from the rent proceeds collected at the Park." (Docket No. 226, page 12.) CDFI now seeks to modify the Order to have the Court receiver make payments on the principal of the CDFI loan(s). CDFI seeks an order from the Court: "(1) restore the stipend from Duro at the previous $2,000 per month; (2) direct Receiver to pay CDFI the $3,000 per month remainder from the current Duro stipend; (3) direct Receiver to pay CDFI $2,000 per month from the Park operating income after paying all necessary expenses to maintain the Park for the health and safety of the residents; and (4) direct Receiver to continue paying the monthly interest payments to CDFI." (CDFI Motion, page 4, Docket No. 264.)

As preliminary note, Interveners contend that CDFI does not have standing to seek to modify the Court's orders. However, after careful review of this matter, Interveners suggest that, if the Court is inclined to considered CDFI's application, then the Court should order as follows:

(1) No specific monthly payments to CDFI be paid from the park income[2].

(2) After funding of a prudent reserve in an amount to be determined by the Receiver, any future park rental income should be first used to retire the

---

[1] The Order established a two year receivership with the primary goals of improving living conditions at the park and to encourage and facilitate the relocation of the park residents "to safe, healthy, affordable and available housing." (Docket No. 226, paragraphs 1 through 15, pages 10 and 11.)

[2] Interveners take no position on whether or not the Court should order payments to CDFI from Mr. Duro's stipend of $5,000 per month.

debt of $63,471.27 for electricity provided by IID from July 1, 2008, through December 31, 2008.

(3) Any park income earned after that should next be applied to address and complete the removal of the accumulated debris on the park's south side, improve the park's fire suppression system and address the park's arsenic contamination of its water supply.

(4) After those items are addressed park income should be used by the Receiver to pay the other debts owed by Mr. Duro and Duro Mobilehome Park including:

    (a) The IID electrical bill of $35,613.68, which is owed to IID for electricity provided pre July 1, 2008, when Defendants were in full control of the park's rental income.

    (b) Payment of the remaining sum of $50,210 owed to Special Masters Jack Shine and Ambassador Pierre Prosper.

    (c) Payment of the monies owed to CDFI which were used to pay the study group in the amount of $169,790.

(5) That the Court modify its April 30, 2009, Order to reflect that defendants Duro and Desert Mobilehome Park, Inc. will assume liability only for the sum of $169,790 of the CDFI Receivership Loan which was actually used to pay the Study Group debt and that defendants Duro and Desert Mobilehome Park, Inc. still owe the sum of $5,375 to Mr. Shine and that the sum of $46,279.44 to Ambassador Prosper.

(6) That the Court further modify its Order of April 30, 2009, to reduce the interest payment to CDFI on the CDFI $220,000 loan obligation to that portion of the debt, $169,790, which was actually used to pay the Study Group debt.

## II. ARGUMENT

### A. CDFI Lacks Standing to bring the Motion

During the course of this litigation, the Hon. Stephen Larson invited non-parties to submit *amicus* briefs or correspondence to the Court to allow governmental, tribal and charitable organizations input in the judicial process. The Court's open invitation resulted in *amicus* briefs submitted by the County of Riverside and the Torres-Martinez Tribe on various legal issues, and letters from the Archdiocese of San Bernardino and other interested parties concerned about the well-being of the park's residents. CDFI was also invited to attend several court hearings to provide information regarding possible funding for the potential rehabilitation of the park. However, CDFI did not intervene in the action and it is not a party to the litigation. As such, it does not have standing to seek formal modification of Court orders or to request that the Court issue new orders in this matter.

### B. Contrary to CDFI's Position, the Loans Made to Mark Adams Did Not Retire the Debt owed to the Study Group

CDFI's position that "[t]he Receivership Loan was made for the express purpose of funding the Study Group, and was thus intended to facilitate the turnaround of the park" is factually incorrect. (CDFI Motion, page 3, lines 17-19.) A chronological review of the Court's docket reveals numerous inconsistencies with CDFI's argument that the personal loans made to Mark Adams were somehow authorized by the Court for direct payment to the Study Group.

Mark Adams was appointed as a Provisional Receiver and Jack Shine and Ambassador Pierre-Richard Prosper were appointed as Special Masters on February 11, 2008. The order for their appointment provided, in relevant part, that "[t]he Provisional Receiver and Special Masters shall be paid their costs and reasonable fees for their services." (Minute Order dated February 11, 2008, Docket No. 59, page 3 para 7.)

It is important to note that the Study Group was appointed primarily as fact finders to advise the Court on the issues raised by the Government's motion for preliminary injunction, which sought closure of the mobilehome park within a 90-day period. (Motion for Preliminary Injunction, filed November 2, 2007.) Of key importance, the appointment of Mr. Adams as Provisional Receiver ***did not*** include the authority to collect the rents at the park or to assume any of the rights and duties of managing the park. The right to collect rents and manage the park remained vested in Defendants Harvey Duro, Sr. and the Desert Mobilehome Park, Inc. Defendants Duro and Desert Mobilehome Park, Inc. were not divested of the rental income and park management until July 1, 2008. (Minute Order dated June 25, 2008, Docket No. 101.) It is assumed that CDFI was aware of the Court orders and knew that its loan(s) to Mark Adams were not secured by the park's rental income at the time the first loan was made.

Per CDFI's motion, the first loan to Mark Adams for $150,000 was made on April 4, 2008. (CDFI Motion, page 3, lines 22-26.) It is important to note that at the time this loan was made to Mark Adams, he was the Court's Provisional Receiver, albeit without authority to collect rents at the park or to manage the park. It is also important to note that as of April 4, 2008, the Court had not ***ordered*** or authorized payment of costs and fees to the Study Group. On April 10, 2008, the Court *sua sponte*, modified its Order of February 11, 2008 and in pertinent part held that "[t]he Court further ORDERS that the powers of the Provisional Receiver remain in place until after the entry of the Courts (*sic*) minute order regarding the hearing to be held on April 28, 2008." (Court Minute Order dated April 10, 2008.) The hearing of April 28, 2008 was subsequently held and this Court issued its Minute Order Granting Motion for Preliminary Injunction on May 1, 2008--effectively terminating Mr. Adams' tenure as the Provisional Receiver.

On May 23, 2008, the Court, *sua sponte*, issued a minute order, holding, in relevant part:

Accordingly, consistent with the orders and findings set forth above, defendants Harvey Duro, Sr. and Desert Mobilehome Park, Inc are ORDERED, jointly and severally, to pay the Study Group, and to provide proof of such payment to the Court, on or before July 1, 2008, as follows:

| | |
|---|---|
| Ambassador Pierre-Richard Prosper: | $62,000 |
| Jack Shine: | $36,000 |
| Mark Adams (including costs and fees related to receivership as well as emergency repairs related imminent threats to health and safety): | $122,000 |

(Minute Order dated May 23, 2008, Docket No. 96.)

Notwithstanding that Mr. Adams was no longer the Provisional Receiver as of May 1, 2008, CDFI apparently continued to deal with Mr. Adams as if he still retained said capacity. "In specific reliance on the May 23, 2008 Order (and the February 11, 2008 Order), CDFI accepted a request to increase the amount of the Receivership Loan from the $150,000 to the new Court approved amount of $220,000 on June 4, 2008, and funded an additional advance of $70,000 on June 18, 2008." (CDFI Motion, page 4, lines 5-8.) Nothing in the May 23, 2008 Order authorized Mr. Adams to secure additional loans from CDFI to pay the Study Group costs and fees. Interveners fail to understand how CDFI relied on May 23rd Order to appropriate the additional $70,000 to Mark Adams.

Be this is at it may, Interveners would perhaps be more sympathetic to CDFI's position if the $220,000 that it lent to Mr. Adams had *actually* been used to pay the entire Study Group obligation. As noted in the Court's Order of April 30, 2009, the two Special Masters are stilled owed part of their fees and costs:

According to Mr. Adams' accounting, $31,125 has been paid to Mr.

Shine, $16,665 was paid to Ambassador Prosper, and $122,00 was paid to Mr. Adams. Accordingly, Mr. Shine is owed $5,375, and Ambassador Prosper is $46,279.44.

(Court Order dated April 30, 2009, page 12, Docket No. 226.)

To date, Mr. Shine and Ambassador Prosper are owed a combined amount of $51,654.44. Taking CDFI's representations that it lent Mr. Adams an additional $70,000 to pay the Court approved Study Group expenditure of $220,000 at face value, it is apparent that Mr. Adams did not comply with his representations to CDFI that the additional $70,000 would be used to retire the Study Group debt. Pursuant to Mr. Adams' representations to the Court, Mr. Adams paid a total of $169,790 from the CDFI loan proceeds to pay Court approved Study Group fees and costs.[3] It is Interveners' understanding that Mr. Adams used the remaining sum of $50,210 from the CDFI loans to pay himself for *unapproved and unauthorized* fees and costs allegedly incurred by Mr. Adams after his removal as Provisional Receiver on May 1, 2008. Holding Mr. Duro and the Desert Mobilehome Park, Inc. responsible for the entire CDFI loan obligation of $220,000 *and* the unpaid sum of $51,654.44 still owed to Mr. Shine and Ambassador Prosper would result in a total debt of $271,564.44 owed by Defendants. Such a result would be wholly unjust and allow CDFI and Mr. Adams to benefit from Mr. Adams' wrongdoing.

### C. The Imperial Irrigation District Debt of Approximately $100,000 for Electricity takes Precedence over any obligations to CDFI

In the Order Re Remedies After Bench Trial, this Court enumerated 15 measures which it deemed necessary "[t]o address the most pressing health and safety concerns at the Park" and thus the Court ordered "the Receiver to oversee and

---

[3] Interveners have previously objected to having the entire interest on the $220,000 loan obligations incurred by Mr. Adams paid by the rental income from the park on these same grounds. (Interveners' Objection to Payment of Interest on Loan Obligation, Docket No. 231.) Interveners' renew their objection and request that the Court modify the interest payment to reflect the actual payment of $169,790 of Study Group approved fees and costs from the CDFI loans.

implement the following measures as soon as possible." Number 8 on the list was to "[n]egotiate with electrical utility provider to restore electricity and satisfy outstanding electrical bills." (Docket No. 226, April 30, 2009, pages 10-11.) Information provided by this Court's Receiver, Thomas J. Flynn, indicates that the Imperial Irrigation District (IID), the park's electrical provider, is owed the sum of $63,471.27 for electricity provided from July 1, 2008, through December 31, 2008. Interveners note that during this six-month time period, defendants Mr. Duro and the Desert Mobilehome Park, Inc. had been divested of their right to collect rents at the park and to manage the park per Court order. (Court Minute Order dated June 25, 2008, Docket No. 101.) An additional sum of $35,613.68 is owed to IID for electricity which it provided pre-July 1, 2008, during which defendants Mr. Duro and Desert Mobilehome Park, Inc. were in control of both rent collection and park management. Pursuant to the Court's Order of April 30, 2009, payment of the $63,471.27 to IID incurred during the period that the park was under court control should take precedence over any payment of principal to CDFI.

### D. The Park is Still In Need of Improvements Which Require the Expenditure of Park Rental Income

In addition to satisfying the outstanding electrical bills, the Court Order of April 30, 2009, also directed the Receiver to "[r]emove the accumulated pile of debris along the south side of the park." (Court Order dated April 30, 2009 pages 11, para 9, Docket No. 226.) The Receiver has made significant progress in fulfilling this obligation, but the job has not yet been completed. Interveners acknowledge that full compliance with this directive has been the result of insufficient funds to complete the task.

After completion of the 15 enumerated directives, the Court also ordered that the Receiver "address, as feasible, other inadequacies of the Park's infrastructure," which included its fire suppression system and water system.(Court Order dated April

30, 2009, page 11, (Docket No. 226.) Again, Interveners are aware that the Receiver has made important strides in addressing the park's fire suppression system by providing each household with a fire extinguisher and by keeping the park free of debris and wooden additions to the park's mobilehomes. However, Interveners believe that additional compliance with this directive should include additional fire hydrants and improvements in water pressure by replacing and upgrading the water pumps at the park. This again, requires expenditure of rental income.

Lastly, and of major concern, is the Receiver's plans to comply with the EPA directive to address the arsenic contamination of the park's water supply. Although not addressed in the Court's April 30, 2009, Order, the California Legislature recently passed AB 2515 which, for County mobilehome parks, would require point of entry and point of use water systems to be installed. Governor Arnold Schwarzenegger has until September 30, 2010 to sign or veto the bill. While this bill would not be applicable on tribal lands, Interveners believe that it should be used as a model to guide the Receiver and the Court in addressing this problem on an interim basis. Again, the only source of funds available to the Receiver to alleviate this problem is from the park's rental income.

*E. The Park's Income is Unstable and Two Upcoming Events are Likely to Cause Significant Drops in Park Income*

The Court's Order of April 30, 2009 established a two-year receivership. Without modification, the Court's Order is set to expire in approximately eight months, on April 30, 2011. As we near April 30, 2011, rents will undoubtedly start to decline as residents anticipate the pending closure of the park. For example, during the month long trial in April of 2009 when the park's fate was yet to be determined, park rents for the month of April 2009 were reported to be $68,397.13. After the Court's decision on April 30, 2009 which provided that the park would remain open through April 30, 2011, rents in May of 2009 were reported to be

$104,536.16--a difference of $36,139.03. (First Report of Receiver Thomas J. Flynn, submitted June 15, 2009 at page 1.) One can expect a similar scenario as we approach April 30, 2011.

A second significant factor which will have an impact on the rental income at the park is the pending completion of the Mountain View Estates Mobilehome Park (Mountain View), which is the County of Riverside's primary relocation project for the displaced Duroville residents. Mountain View, a planned 398-unit mobilehome park in close proximity to Duroville, is almost complete. Unfortunately, the County has experienced setbacks in completing the sewer and water lines which will service the park. The County's most optimistic projection is that units will be placed and ready for occupancy in late January or early February of 2011. As soon as the sewage lines are completed and the park is ready to accept displacees from Duroville, the County expects to have 100 mobilehomes on the site within 45 days, with approximately 77 families from Duroville expected to be included in the first 100 families at Mountain View. Thereafter, the County expects to place an additional 12 units per month until the full 398 unit park is fully occupied. It is not yet known how many additional Duroville families will be included in the 12 units to be placed monthly, but the County has advised Interveners that Duroville families will be given high priority in the allocation of units as the County is well aware of the Court's April 30, 2009, Court Order. In any event, Duroville could be facing a significant reduction in residents with a corresponding reduction in rental income as the Mountain View project is completed. As such, no specific additional monthly payments of any kind can be ordered, as future park income is entirely speculative.

### III. CONCLUSION

As set forth above, any income that the park may earn in future months is entirely speculative. As such, no specific monthly payments to CDFI can or should be paid from the park income. It is only recently that the park has started to

accumulate small monthly surpluses. Moreover, there are still Court directives which have not been met.

To the extent that this court is inclined to order any future payments from park rental income, such future income should be first used to retire the debt of $63,471.27 for electricity provided by IID from July 1, 2008, through December 31, 2008. Any park income earned after that should next be applied to address and complete the removal of the accumulated debris on the park's south side, improve the park's fire suppression system and address the park's arsenic contamination of its water supply.

Only after those items are addressed should park income be used by the Receiver to pay the other debts owed by Mr. Duro and Desert Mobilehome Park. Such other debts include the IID electrical bill of $35,613.68, which is owed to IID for electricity provided pre July 1, 2008, when Mr. Duro and Desert Mobilehome Park were in full control of the park's rental income. Those debts also include the remaining sum of $51,654.44 owed to Mr. Shine and Ambassador Prosper. The amount owed to CDFI which was used to pay the study group, $169,790, is also one of those debts. Interveners will leave it to the discretion of the Court and the Receiver to determine which of these competing debts take priority, or whether any or all should be paid in smaller installments, but concurrently.

The Court should also modify its April 30, 2009, Order to reflect that defendants Duro and Desert Mobilehome Park will assume liability only for the sum of $169,790 of the CDFI Receivership Loan which was actually used to pay the Study Group debt and that defendants Duro and Desert Mobilehome Park, Inc. still owe the sum of $5,375 to Mr. Shine and that the sum of $46,279.44 to Ambassador Prosper.

Lastly, the Court should further modify its Order of April 30, 2009, and order the Receiver to reduce the interest payment to CDFI on the CDFI $220,000 loan obligation to that portion of the debt, $169,790, which was actually used to pay the Study Group debt.

DATED: August 31, 2010     **California Rural Legal Assistance, Inc.**

**Chandra Gehri Spencer, A Professional Law Corporation**

Respectfully Submitted,

By: _____

Arturo Rodriguez
Attorney for Intervener/Defendants

**PROOF OF SERVICE BY MAILING**

I am over the age of 18 years of age, and not a party to this action. I am employed with the law offices of CALIFORNIA RURAL LEGAL ASSISTANCE, INC. My business address is 1460 Sixth Street, Coachella, CA 92236.

On August 31, 2010, I served the foregoing document entitled:

**INTERVENERS' OPPOSITION TO MOTION FOR ORDER INCREASING PAYMENTS TO CLEARINGHOUSE COMMUNITY DEVELOPMENT FINANCIAL INSTITUTION FROM COURT RECEIVERSHIP.**

On each person or entity named below by enclosing a copy in an envelope addressed as shown below and placing the envelope for collection and mailing on the date and at the place shown below following our ordinary office practices. I am readily familiar with the practice of this office collection and processing correspondence for mailing. On the same day tthat correspondence is placed for collection and mailing, it is deposited in the ordinary couser of business with the United States Postal Service in a sealed envelope with postage fully paid.

Date of mailing; August 31, 2010. Place of mailing: Coachella, California.

Person(s) and/or Entity(ies) to Whom mailed:

| | |
|---|---|
| Clinton Burr<br>10 South Riverside Place, Suite 1800<br>Chicago, IL 60606<br><br>Thomas J. Flynn<br>Duroville Receivership Orgaization Inc.<br>68-800 Pierce Street<br>Thermal, CA 92274 | Jose Luise Crisantos<br>68-800 Highway 195<br>P.O. Box 198<br>Thermal, CA 92274 |

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 31, 2010, at Coachella California.

Ruth Estrada