1  DOUGLAS G. TENNANT, Bar No. 119133
2  FRANKEL & TENNANT
   PROFESSIONAL CORPORATION
3  895 Dove Street, Suite 119
4  Newport Beach, California  92660
   dtennant@frankel-tennant.com
5  Telephone: (949) 222-3456
6  Facsimile: (949) 222-3453
7
   Attorneys for
8  CLEARINGHOUSE COMMUNITY
9  DEVELOPMENT FINANCIAL INSTITUTION
10
11          **UNITED STATES DISTRICT COURT**
12      **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
13
14  UNITED STATES OF AMERICA,      )  Case No.:  EDCV07-1309
                                    )
15                                  )  REPLY TO MOTION FOR ORDER
16         Plaintiff,               )  INCREASING PAYMENTS TO
                                    )  CLEARINGHOUSE COMMUNITY
17  v.                              )  DEVELOPMENT FINANCIAL
                                    )  INSTITUTION FROM CERTAIN
18                                  )  PROCEEDS FROM THE
19  HARVEY DURO, SR. and DESERT     )  RECEIVERSHIP OF DESERT
    MOBILEHOME PARK, INC, a         )  MOBILEHOME PARK, INC.; AND
20  California corporation,         )  MEMORANDUM OF POINTS AND
                                    )  AUTHORITIES IN SUPPORT THEREOF
21                                  )
22         Defendants.              )  Date:      Vacated
                                    )  Time:      Vacated
23                                  )  Courtroom: 4
                                    )           3470 Twelfth Street
24                                  )           Riverside, Ca  92501
25                                  )           Hon. David T. Bristow
26                                  )
27  _____  )
28

-1-

1  TO THOMAS J. FLYNN, RECEIVER OF DESERT MOBILEHOME PARK,

2  INC., PLAINTIFF UNITED STATES OF AMERICA, DEFENDANTS HARVEY

3  DURO, SR., AND DESERT MOVILEHOME PARK, INC., INTERVENTORS

4  CRUZ NAVARRO, DEFLINA OCHOA, AND ORBELINA ESCOBAR, AND

5  THEIR RESPECTIVE ATTORNEYS OF RECORD:

6      Clearinghouse Community Development Financial Institution ("CDFI")

7  hereby submits this brief in reply to CDFI's motion for an order increasing

8  payments to CDFI from certain proceeds received and controlled by Thomas J.

9  Flynn, as the receiver of Desert Mobilehome Park, Inc. by order of appointed by

10  this Court dated April 30, 2009 (hereinafter the "Receiver," and the receivership

11  thereby created hereinafter the "Receivership") in repayment of a loan CDFI made

12  for the benefit of the Receivership.

13

14  DATED:  September 14, 2010

15                             FRANKEL & TENNANT

                           PROFESSIONAL CORPORATION

16

17                             By:_____

18                                DOUGLAS G. TENNANT

                           Attorneys for CLEARINGHOUSE

19                             COMMUNITY DEVELOPMENT

                           FINANCIAL INSTITUTION

20

21

22

23

24

25

26

27

28

FRANKEL & TENNANT PROFESSIONAL CORPORATION
895 Dove Street, Suite 119, Newport Beach, CA 92660
Tel: (949) 222-3456 Fax: (949) 222-3453

-2-

**Reply to Motion for Order Increasing**
**Payments From Certain Proceeds from the Receivership**
                        ORIGINAL DOCUMENT
                 PREPARED ON RECYCLED PAPER

1

2

## **Table of Contents**

3   1.   THE RECEIVERSHIP LOAN WAS CRUCIAL TO ADDRESSING
4        THE SERIOUS HEALTH AND SAFETY HAZARDS FOUND AT
5        THE MOBILE HOME PARK.................................................................1

6   2.   THE COURT CONTINUES TO HAVE JURISDICTION OVER THE
7        RECEIVERSHIP AND MANAGEMENT OF THE MOBILE HOME
8        PARK AND SHOULD GRANT CDFI'S MOTION IN THE
9        INTERESTS OF JUSTICE. ................................................................3

10  3.   DEFENDANTS ARE NOT IMMUNE TO THE COURT'S ORDERS
11       OR THE RECEIVERSHIP AND CANNOT AVOID THEIR JOINT
12       AND SEVERAL PERSONAL LIABILITY TO PAY FOR THE
13       EXPENSE OF THE STUDY GROUPAND RECEIVERSHIP.............4

14  4.   IT WAS UNDERSTOOD BY ALL INVOLVED THAT THE CDFI
15       RECEIVERSHIP LOAN WAS THE ONLY MEANS FOR THE
16       RECEIVERSHIP TO MOVE FORWARD............................................8

17  5.   CDFI SHOULD BE GIVEN PRIORITY TO RECEIVE NET RENT
18       PROCEEDS TO RECOVER SOME PORTION OF ITS LOAN
19       PRINCIPAL BEFORE THE PARK CLOSES..................................... 10

20  6.   CONCLUSION. ................................................................. 12

21

22

23

24

25

26

27

28

FRANKEL & TENNANT PROFESSIONAL CORPORATION
895 Dove Street, Suite 119, Newport Beach, CA 92660
Tel: (949) 222-3456  Fax: (949) 222-3453

**Reply to Motion for Order Increasing**                    ORIGINAL DOCUMENT
**Payments From Certain Proceeds from the Receivership**    PREPARED ON RECYCLED PAPER

FRANKEL & TENNANT PROFESSIONAL CORPORATION
895 Dove Street, Suite 119, Newport Beach, CA 92660
Tel: (949) 222-3456 Fax: (949) 222-3453

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES

**1.  THE RECEIVERSHIP LOAN WAS CRUCIAL TO ADDRESSING THE SERIOUS HEALTH AND SAFETY HAZARDS FOUND AT THE MOBILE HOME PARK.**

Clearinghouse Community Development Financial Institution ("CDFI") provided a credit line ("CDFI Loan") to the Court-appointed receivership in the beginning when no other funds were available.  The CDFI Loan was used to address the health and safety crises that prompted plaintiff United States of American ("Plaintiff") to seek to shut down the Duroville mobile home park (the "Park") and the Court to issue injunctions and impose a receivership to avert "a major humanitarian crisis" and preclude Harvey Duro, Sr. ("Duro") "from profiting from his unlawful residential and business operation."  Minute Order dated April 30, 2009, Docket #226, pg. 3 and 7.  CDFI provided essential liquidity at the outset of the Court-ordered Receivership and Study Group.  The benefits of the Receivership and Study Group to the residents at the Park are not in question, and neither is the certainty that without the funds provided by CDFI, the Receivership and Study Group could not have effectively carried out their duties.

More than two years after providing the crucial financing, and after the Park has proved to be sustaining net income under the Receivership, CDFI is asking the Court to allow it to receive payments toward the unpaid principal, at least until the Park is closed pursuant to the Court's orders.  Defendants Duro and Desert Mobilehome Park, Inc. (collectively, "Defendants") oppose CDFI's motion on the misguided assertion that Duro should be allowed to continue to profit from the monthly stipend paid by the Receiver out of rental proceeds of the Park.  Despite being held personally liable to pay $220,000 for the Provisional Receiver and Study Group expenses, Defendants assert that Duro should continue to collect his full stipend because the Secretary of the Interior (i.e. the United States of America) has

-1-

FRANKEL & TENNANT PROFESSIONAL CORPORATION
895 Dove Street, Suite 119, Newport Beach, CA 92660
Tel: (949) 222-3456  Fax: (949) 222-3453

1  not approved a reduction in the amount as an encumbrance on an Indian land
2  allotment.  Plaintiff, however, sued Defendants and obtained equitable orders
3  imposing the Receivership to seize control of the rents and the Park, and does not
4  oppose this motion.  Moreover, the Defendants' personal liability to pay the
5  $220,000 is not an encumbrance on the land.

6      Intervenors Cruz Navarro, Delfina Ochoa and Orbelina Escobar (collectively,
7  "Intervenors") oppose CDFI's motion on the assertion that Mark S. Adams
8  (appointed as the "Provisional Receiver") obtained a portion of the CDFI
9  Receivership Loan after the Court ordered that a professional management team be
10  established to take over management of the Park, and because the Park is still in
11  need of repairs and owes money to the electric company.  CDFI relied on the
12  Court's approval of the $220,000 in Receivership and Study Group expenses in
13  loaning that specific amount.  Ollendorff Dec., ¶ 2.  Ultimately, the Receivership
14  loan provided liquidity when most urgently needed to improve the health and safety
15  conditions at the Park.  Declaration of Mark S. Adams ("Adams Dec."), ¶ 5.
16  Without accepting Interverners' argument, it would be inequitable to deny CDFI's
17  motion on these grounds.  All of the money loaned by CDFI went to pay legitimate
18  expenses to meet the Court Orders and/or freed up rental income from the Park to
19  make required repairs and improvements.  Fairness and justice now require that
20  CDFI receive some portion of the net rental proceeds ahead of the liable
21  Defendants, and at least in proportion to other Receivership administrative
22  expenses, such as the power bill.

23      The Court-appointed receiver Thomas Flynn ("Receiver") met and conferred
24  with CDFI, as ordered, but concluded that a further Court order is needed to
25  redistribute the net monthly proceeds of the Park.  CDFI, therefore, must seek such
26  an order if it has any hope of receiving some payment of the loan principal before
27  the Park closes.
28

**Reply to Motion for Order Increasing
Payments From Certain Proceeds from the Receivership**    ORIGINAL DOCUMENT
PREPARED ON RECYCLED PAPER

FRANKEL & TENNANT PROFESSIONAL CORPORATION
895 Dove Street, Suite 119, Newport Beach, CA 92660
Tel: (949) 222-3456  Fax: (949) 222-3453

**2.    THE COURT CONTINUES TO HAVE JURISDICTION OVER THE
RECEIVERSHIP AND MANAGEMENT OF THE PARK AND
SHOULD GRANT CDFI'S MOTION IN THE INTERESTS OF
JUSTICE.**

The Court has throughout this matter, exercised its broad authority to issue orders and conduct a bench trial concerning the health and safety hazards at, and operation of, the Park.  The Court exercised its equitable powers, among other things, to:  appoint Ambassador Pierre-Richard Proper and Jack Shine as "Special Masters," and Mark S. Adams as the "Provisional Receiver" to comprise a Study Group; authorize the Provisional Receiver to take necessary action for the health and safety of the Park residents in his sole discretion; issue a preliminary injunction based on findings of the Study Group;  hold defendants personally liable to pay the fees and costs; hold that the fees and costs incurred by the Study Group and Provisional Receiver were reasonably incurred in exercising their duties as vested by the Court; conduct a bench trial and grant equitable remedies and order payment of interest to CDFI from rental proceeds.  In the interests of justice and fairness, CDFI is requesting that the Court further order the current Receiver to reallocate payments from the net rental proceeds of the Park to begin satisfying Defendants' obligations to pay for the fees and costs incurred for the Study Group and the Receivership.

Throughout the exercise of its equitable authority, the Court has recognized CDFI as a key non-party entity providing critical financing to the Provisional Receiver for the implementation of the equitable orders ultimately benefiting the residents of the Park.  The Court expressly acknowledged the availability of funding from CDFI to the Provisional Receiver, included CDFI in settlement conferences, encouraged further discussions with CDFI for additional financing to effect its Orders, granted CDFI the continuing right to inspect the books and records

-3-

**Reply to Motion for Order Increasing
Payments From Certain Proceeds from the Receivership**                    ORIGINAL DOCUMENT
PREPARED ON RECYCLED PAPER

of the Park and make objections, ordered the Receiver to pay interest on the loan used to pay the administrative expenses of the Receivership which the Court found to be reasonably incurred, and ordered the Receiver to meet and confer with CDFI regarding making payments toward unpaid loan principal.  CDFI remains sensitive to the needs of the Park residents, and has attempted to meet and confer with Receiver in good faith.

CDFI has no desire or intent to interfere with the equitable remedies ordered by the Court for the benefit of the Park residents in seeking an increase in the amounts being paid to CDFI from rental proceeds of the Park.  However, CDFI has not received any principal payments since funding the CDFI Loan over two years ago.  In sharp contrast, the liable Defendants continue to be paid a portion of the net rental proceeds from the Park.  The meet and confer efforts between CDFI and the Receiver culminated with Receiver stating that he does not believe he can change the current distributions without Court order, thus inviting CDFI to make this motion for such an order.  CDFI remains open to the Court fashioning an appropriate equitable order to allow it to receive payments toward outstanding principal before the Park closes and rents cease, while balancing the health and safety objectives for the residents.

**3.     DEFENDANTS ARE NOT IMMUNE TO THE COURT'S ORDERS OR THE RECEIVERSHIP AND CANNOT AVOID THEIR JOINT AND SEVERAL PERSONAL LIABILITY TO PAY FOR THE EXPENSE OF THE STUDY GROUPAND RECEIVERSHIP.**

Defendants oppose CDFI's motion based on a spurious argument that the Court does not have the authority to direct the Receiver to modify the payments made from the net rent proceeds of the Park.  Defendants argue that a change in the current distribution order would be a void alienation of an Indian land allotment without approval from the Secretary of the Interior, citing 25 U.S.C. Section 348.

FRANKEL & TENNANT PROFESSIONAL CORPORATION
895 Dove Street, Suite 119, Newport Beach, CA 92660
Tel: (949) 222-3456  Fax: (949) 222-3453

-4-

See Defendants' Opposition, pg. 3. The logical conclusion of Defendants' argument is that any, and all, orders by this Court affecting the management of the Park and/or its rental proceeds are void without the prior approval of the Executive agency entrusted with managing the Federal ownership over Indian land allotments. Defendants, however, cannot make themselves immune to the jurisdiction of this Court or the Receivership already in control of the finances of the Park. The opportunity for Defendants to raise such an argument has long passed, and is nonetheless misguided.

As described above and in CDFI's motion, this Court has already issued numerous orders, including some pursuant to stipulation by the parties in the case, and after trial, to improve the health and safety issues and pay expenses from rental proceeds of the Park. When the Court decided the reasonableness of the fees and costs of the Study Group, Defendants did not object, and the Intervenors' limited objections were overruled. Minute Order dated May 23, 2008, Docket #96, pg. 1. There was no appeal and no challenge to the Court's specific findings of reasonableness of the fees and costs of the Study Group and Provisional Receiver, or to its ruling that Duro and the Park are jointly and severally liable to pay for the fees and costs. The relief sought by CDFI does not reopen these prior rulings for reconsideration. CDFI merely seeks an increase in the distribution of rental proceeds from the Park by the Receiver so that CDFI may receive repayment of at least a portion of principal of the CDFI Loan before the Park is ultimately shut down pursuant to the Court's orders.

Any argument that this Court cannot exercise its equitable authority over the management and distribution of rent proceeds of the Park without first obtaining Plaintiff's consent is unsupportable. The plaintiff in this action *is* the United States of America ("Plaintiff"), which sought the closure of the Park altogether. Through the course of the litigation, the Court granted Plaintiff a preliminary injunction and

FRANKEL & TENNANT PROFESSIONAL CORPORATION
895 Dove Street, Suite 119, Newport Beach, CA 92660
Tel: (949) 222-3456 Fax: (949) 222-3453

-5-

granted post-trial remedies which contain equitable orders pertaining to the management and distribution of rental proceeds of the Park, and Plaintiff does not oppose CDFI's motion.  See Minute Order dated May 1, 2008, Docket #87, and Minute Order dated April 30, 2009, Docket #226, and Minute Order dated October 1, 2009, Docket #248.

In granting Plaintiff a preliminary injunction for correction of health and safety hazards at the Park, the Court specifically held that Duro and the Park comply with a previously entered stipulation to remedy the health and safety hazards at the Park.  Minute Order dated May 1, 2008, Docket #87, pg. 2.  The Court further ordered the establishment of a professional property management team and required that any loans be satisfied *before* operational control of the Park would revert to Defendants.  Minute Order dated May 1, 2008, Docket #87, pg. 3. The Court further ordered that no later than July 1, 2008, Duro and the Park certify under penalty of perjury having met certain conditions, including:

> 3.  Proof of payment of outstanding obligations to the Study Group.  The Court ORDERS the Provisional Receiver to serve his final accounting to the parties of record.  The Court will entertain any objections to the reasonableness of the expenses incurred by the Special Masters and Provisional Receiver on or before May 15, 2008.  The Court will thereafter issue an order directing payment of all reasonable fees and costs.

Minute Order dated May 1, 2008, Docket #87, pg. 4.  Thereafter, the Court approved the reasonableness of the expenses incurred by the Special Masters and Provisional Receiver and ordered Duro and the Park to make payment no later than July 1, 2008.  Minute Order dated May 23, 2008, Docket #96, pg. 2.  Duro and the Park failed to pay the expenses of the Study Group and Provisional Receiver.

FRANKEL & TENNANT PROFESSIONAL CORPORATION
895 Dove Street, Suite 119, Newport Beach, CA 92660
Tel: (949) 222-3456  Fax: (949) 222-3453

**Reply to Motion for Order Increasing**
**Payments From Certain Proceeds from the Receivership**

ORIGINAL DOCUMENT
PREPARED ON RECYCLED PAPER

FRANKEL & TENNANT PROFESSIONAL CORPORATION
895 Dove Street, Suite 119, Newport Beach, CA 92660
Tel: (949) 222-3456  Fax: (949) 222-3453

1    Following settlement conferences, *the parties stipulated*, and the Court

2  ordered pursuant to such stipulation:

3             That Duroville Renaissance Corporation ("DRC"), a California

4             not-for-profit public benefit corporation, through its designated

5             agent Thomas J. Flynn, shall assume control as property

6             manager of the Desert Mobilehome Park, Inc. (also know [sic]

7             as Duroville), with exclusive authority to control the property,

8             books, records, rent receipts, and finances thereof, for the

9             period July 1, 2008, through August 31, 2008.

10  Minute Order dated June 25, 2008, Docket #101, p. 2.  Mr. Flynn's management of

11  the Park continued through trial in April, 2009, at the conclusion of which he was

12  appointed as the Receiver for a two year term through April 30, 2011.  Minute

13  Order dated April 30, 2009, Docket #226, pg. 9.  After conducting the trial, the

14  Court also ordered that CDFI receive interest payments on the outstanding CDFI

15  Loan which remained unpaid despite the Court's orders that Defendants pay the

16  Study Group and Provisional Receiver expenses.  Minute Order dated April 30,

17  2009, Docket #226, pg. 12.

18    Defendants' argument seeks to undermine the Court's authority to issue all of

19  these orders, not just the order sought by CDFI's motion.  The Court has properly

20  exercised its equitable powers over management of the rental proceeds of the Park

21  and in appointing the Study Group and Receivership.  Defendants have never

22  appealed any of the foregoing orders, nor could they now.  Moreover, the joint and

23  several liability imposed by the Court on Defendants to pay the fees and costs of the

24  Study Group and Provisional Receiver is personal, and does not constitute an

25  encumbrance running with the land or alienation of an allotment, as claimed by

26  Defendants.  See 25 U.S.C. §348.

27

28

-7-

---

FRANKEL & TENNANT PROFESSIONAL CORPORATION
895 Dove Street, Suite 119, Newport Beach, CA 92660
Tel: (949) 222-3456  Fax: (949) 222-3453

1    The Court should again exercise its equitable authority to order Receiver to

2    direct $3,000 of the $5,000 monthly stipend paid to Duro from the rental proceeds

3    of the Park to be paid to CDFI to apply toward paying CDFI Loan principal before

4    the Park closes.

5    **4.    IT WAS UNDERSTOOD BY ALL INVOLVED THAT THE CDFI**

6    **LOAN WAS THE ONLY MEANS FOR THE RECEIVERSHIP TO**

7    **MOVE FORWARD.**

8         In their opposition to CDFI's motion, Intervenors argue that the appointment

9    of the Provisional Receiver did not include authorization to collect the rents at the

10   Park. Intervenors' Opposition, pg. 5. Intervenors, however, wrongly assert that

11   Provisional Receiver was not vested with the duties and authority to manage the

12   Park. The Court expressly empowered the Provisional Receiver to take action to

13   address any health and safety concern:

14        The Provisional Receiver may authorize any urgently needed

15        immediate repairs, reconstruction, or rehabilitation which he, in

16        his sole discretion, shall deem necessary on an emergency basis

17        to protect against an imminent threat to the health or safety of

18        any person on the Property.

19   Minute Order dated February 11, 2008, Docket #59, pg. 3. The Court further noted

20   and understood that the CDFI Loan was the only means for the Receivership to

21   move forward as directed by the Court:

22        The Court is informed that the Provisional Receiver has secured

23        a $150,000 line of credit from Clearinghouse CDFI, a financing

24        institution backed by some of the nation's leading banks and

25        which is dedicated to financing otherwise unbankable projects

26        benefitting low-income families and un[der]served

27        communities.

28

-8-

Minute Order dated February 11, 2008, Docket #59, pg. 3.

In fact, the hazardous conditions at the Park and the appointment of the Study Group required immediate funding. The CDFI loan funds were essential, and the Receivership could not have succeeded for the benefit of the tenants, and even the Defendants, without these funds. Adams Dec., ¶ 4. All parties involved understood that the only way the Provisional Receivership and Study Group could proceed was with financing from CDFI. Adams Dec., ¶ 4. All of the Receivership Loan funds were used for legitimate Receivership purposes, including as follows:

|  | Income | Expense |
|---|---|---|
| Advance from Receiver | $ 14,505.83 | |
| CDFI Loan Payment 4/8/08 | $ 128,420.00 | |
| CDFI Loan Payment 4/21/08 | $ 21,000.00 | |
| CDFI Loan Payment 6/18/08 | $ 70,000.00 | |
| Interest – CDFI Loan (Paid from advance by Receiver) | | $ 11,644.22 |
| Professional Fees - Thomas Flynn | | $ 15,000.00 |
| Professional Fees - Study Group/ Jack Shine | | $ 31,125.00 |
| Professional Fees - Study Group/ Prosper | | $ 16,665.00 |
| Receiver Fees-Study Group/Mark Adams | | $112,015.00 |
| Receivership Administrative | | $ 30,000.00 |
| Receivership Expense | | $ 6,917.04 |
| Travel Expense | | $ 10,486.46 |
| Totals | $ 233,925.83 | $ 233,852.72 |

See Adams Dec., ¶ 3, Exhibit 1. All of the money loaned by CDFI went to pay legitimate Receivership expenses to meet the orders issued by the Court and/or freed up rental income from the Park to make required repairs and improvements. Adams Dec., ¶ 3. Fairness and justice now require that CDFI receive some portion

FRANKEL & TENNANT PROFESSIONAL CORPORATION
895 Dove Street, Suite 119, Newport Beach, CA 92660
Tel: (949) 222-3456 Fax: (949) 222-3453

**Reply to Motion for Order Increasing
Payments From Certain Proceeds from the Receivership**

ORIGINAL DOCUMENT
PREPARED ON RECYCLED PAPER

1   of the net rental proceeds ahead of the liable Defendants, and at least in proportion
2   to other Receivership administrative expenses, such as the electric bill.

3        Recognizing the contribution by CDFI, the Court already ordered that it
4   receive interest payments of approximately $1,600 per month out of Park rental
5   proceeds, and that Receiver meet and confer about finding a way to pay down loan
6   principal.  CDFI attempted in good faith to meet and confer with Receiver, and
7   continues to be willing to support an equitable solution to the repayment of
8   outstanding Receivership administrative expenses.

9   **5.   CDFI SHOULD BE GIVEN PRIORITY TO RECEIVE NET RENT**
10  **PROCEEDS TO RECOVER SOME PORTION OF ITS LOAN**
11  **PRINCIPAL BEFORE THE PARK CLOSES.**

12       Intervenors argue that CDFI, while it may be entitled to additional payments,
13  is not the lead priority.  Intervenors' Opposition, pg. 7.  CDFI has not sought an
14  increase in payments for more than two years, and has allowed the Receivership to
15  address and stabilize many of the health and safety issues at the Park.  The Park
16  continues to operate with a net operating income.  Even as the size of the Park
17  decreases to comply with the Court's orders, its expenses will also decrease through
18  to its closure.  As previously stated, CDFI does not want to interfere with
19  safeguarding the health and safety of the Park residents and appreciates Intervenors'
20  desire to have money on hand to address any emergencies that arise prior to closure
21  of the Park.  CDFI supports the idea that the Receiver maintain a reasonable cash
22  reserve to address such contingencies.  Accordingly, CDFI would support Receiver
23  retaining a proposed $50,000.00 in reserve.  Each month, any additional rental
24  proceeds of the Park could first go to replenish the Receivership reserve fund.

25       Once such reasonable reserve is reached, however, any additional funds
26  should flow to CDFI certainly ahead of the liable Defendants.  And, if the Court
27  determines that other Receivership administrative expenses remain unpaid, CDFI

28

FRANKEL & TENNANT PROFESSIONAL CORPORATION
895 Dove Street, Suite 119, Newport Beach, CA 92660
Tel: (949) 222-3456   Fax: (949) 222-3453

-10-

should, at a minimum, receive a pro rata share of such available cash.  Pre-Receivership Park expenses should receive the lowest priority and be paid only after the Receivership administrative expenses are paid.

    For consideration of the Court, CDFI suggests that a fair and equitable distribution of rental proceeds might go in the following priority:

1. Receiver to pay all necessary operating expenses for the benefit and safety of the residents at the Park.

2. Receiver to pay CDFI the previously approved monthly interest payments of approximately $1,600.00.

3. Receiver to pay CDFI $3,000.00 in lieu of Duro's current monthly stipend of $5,000.00.

4. Receiver to pay Duro $2,000.00 monthly stipend.

5. Receiver to retain a reserve of $50,000.00 from net rental income to handle any unexpected contingencies in operating the Park until the Park closes, at which time the reserve funds will be distributed on a pro rata basis as set forth below.

6. Receiver to pay on a pro rata basis any remaining net monthly income to apply to the following administrative expenses of the Receivership:

| Receivership Administrative Expenses Unpaid | Amount | Pro Rata Percentage |
|---|---|---|
| Adams Receivership (Study Group) CDFI Loan | $ 220,000.00 | 66% |
| Prosper (Study Group) | $ 46,279.44 | 14% |
| Shine (Study Group) | $ 5,375.00 | 2% |
| Imperial Irrigation District 7/1/08-12/31/08 | $ 63,471.27 | 19% |
| **Total Receivership Admin Expenses Unpaid:** | $ 335,125.71 | 100% |

FRANKEL & TENNANT PROFESSIONAL CORPORATION
895 Dove Street, Suite 119, Newport Beach, CA 92660
Tel: (949) 222-3456  Fax: (949) 222-3453

-11-

7. Once Receivership administrative expenses are paid, Receiver to pay pre-Receivership administrative expense of $35,613.68 to Imperial Irrigation District for service provided before July 1, 2008.

## 6.   CONCLUSION.

The Defendants who are liable for payment of $220,000 to fund the Study Group and Provisional Receiver are continuing to be paid a portion of the rental proceeds from the Park as it is being wound down.  Meanwhile, CDFI has never received any principal payments, despite having provided such instrumental financing at a crucial time in the Receivership.  Since the Court appointed the Study Group and Provisional Receiver, the Court has maintained oversight and issued numerous orders affecting the Park and management of rents.  In the interests of fairness and justice, CDFI respectfully requests that the Court grant its motion, or issue an order *sua sponte*, directing Receiver to modify the distribution of rental proceeds so that CDFI may begin receiving payments toward the outstanding Receivership Loan principal.

DATED:  September 14, 2010

FRANKEL & TENNANT
PROFESSIONAL CORPORATION

By: _____
DOUGLAS G. TENNANT
Attorneys for CLEARINGHOUSE
COMMUNITY DEVELOPMENT
FINANCIAL INSTITUTION

FRANKEL & TENNANT PROFESSIONAL CORPORATION
895 Dove Street, Suite 119, Newport Beach, CA 92660
Tel: (949) 222-3456  Fax: (949) 222-3453

-12-

**Reply to Motion for Order Increasing
Payments From Certain Proceeds from the Receivership**

ORIGINAL DOCUMENT
PREPARED ON RECYCLED PAPER

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF ORANGE

I, Shane E. Coons, hereby declare:

I am employed in the County of Orange, State of California.  I am over the age of 18 and not a party to the within action.  My business address is: Frankel & Tennant Professional Corporation, 895 Dove Street, Suite 119, Newport Beach CA 92660. I am employed in the office of a member of the bar of this court at whose direction the service was made. I have personal knowledge of the matters set forth herein, and, if necessary could and would testify competently thereto.

On September 14, 2010, I served the foregoing document described as REPLY TO MOTION FOR ORDER INCREASING PAYMENTS TO CLEARINGHOUSE COMMUNITY DEVELOPMENT FINANCIAL INSTITUTION FROM CERTAIN PROCEEDS FROM THE RECEIVERSHIP OF DESERT MOBILEHOME PARK, INC.; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF on all interested parties in this action by placing true copies thereof in the U.S. Mail, enclosed in sealed envelopes, with postage thereon fully prepaid, addressed as stated on the attached mailing list:

**[SEE ATTACHED SERVICE LIST]**

I personally deposited such envelopes in the mail at Newport Beach, California.

I also served the foregoing document via EMAIL on each of the following:
Jon.klinck@usdoj.gov
Monica. miller@usdoj.gov
szundellaw@msn.com
arrodriguez@crla.org
cgs@cgslaw.com
ijacobs@crla.org
cberkey@abwwlaw.com
swilliams@abwwlaw.com
terry.jennifer@arentfox.com
madams@calreceivers.com

Each envelope was mailed to the addressees on the attached service list with postage thereon fully prepaid.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that this declaration was executed on September 14, 2010.

_____

SHANE E. COONS

## SERVICE LIST
### United States of America v. Harvey Duro, et al.
### US District Court Central District of California
### Case No. EDCV07-1309 SGL (JCRx)

**Plaintiff's Counsel**

Jonathan B. Klinck, AUSA
Office of the United States Attorney
Civil Division
300 N Los Angeles Street Ste 7516
Los Angeles CA 90012

Monica L. Miller, AUSA
Office of the United States Attorney
Civil Division
300 N Los Angeles Street Ste 7516
Los Angeles CA 90012

**Defendants' Counsel**

J. Scott Zundel
74-000 Country Club Dr Ste C-4
Palm Desert CA 92260

**Intervenor Defendants' Counsel**

Arturo Rodriguez
California Rural Legal Assistance Inc.
1460 Sixth St
PO Box 35
Coachella CA 92236

Chandra G. Spencer
Chandra Gehri Spencer Law Offices
445 S Figueroa St Ste 2700
Los Angeles CA 90071

Ilene J. Jacobs
California Rural Legal Assistance
511 D Street
PO Box 2600 Marysville CA 95901-2600

**Receiver**

Mark S. Adams
3435 Ocean Park Blvd Ste 112
Santa Monica CA 90405

**Special Master Prosper**

Jennifer Cannon Terry
Arent Fox
555 West Fifth St Fl 48
Los Angeles CA 90071

**Amicus**

Clinton Burr
10 South Riverside Plaza Ste 1800
Chicago Il 60606

Curtis Gene Berkey
Alexander Berkey Williams
2030 Addison St Ste 410
Berkeley CA 94704

**Jose Luis Crisantos Pro Se**
Jose Luis Crisantos
68800 Hwy 195
PO Box 198
Thermal CA 92274